### In re Perry RAANAN, Debtor.

### Bankruptcy No. LA 93–21264–LF.

United States Bankruptcy Court,
C.D. California.

April 18, 1995.

Geordan Goebel, Law Offices of Geordan Goebel, Encino, CA, for John Davies.

Steven L. Bryson, Law Offices of Steven L. Bryson, Los Angeles, CA, for debtor.

## OPINION RE ORDER TO SHOW CAUSE RE CONTEMPT

LISA HILL FENNING, Bankruptcy Judge.

The issue before this Court is whether a debt owed to an intentionally omitted creditor in a no-asset bankruptcy case may be excepted from discharge under 11 U.S.C. § 523(a)(3) under the doctrine of equitable estoppel.[1] The debtor argues that the Ninth Circuit's decision in *In re Beezley*, 994 F.2d 1433 (9th Cir.1993), compels the conclusion that the debt has already been discharged. The creditor, on the other hand, argues that the debtor should be precluded from invoking *Beezley* because he chose to prosecute the underlying contract litigation to judgment post-petition without notifying the creditor, arbitrator, or state court judge of his bankruptcy filing until after he lost.

As *Beezley* holds, this unscheduled contract claim would ordinarily be discharged under § 523(a)(3)(A) because it will never be too late for this creditor to file a proof of claim: no claims bar date was ever set in this no-asset Chapter 7 case. For the reasons set forth below, however, this Court concludes that the equitable doctrines of laches and estoppel justify an exception to the principle of universal claims discharge under the

circumstances of this case. The debt is, therefore, nondischargeable.

## I. FACTS

The relevant facts are undisputed. Perry Raanan, a general contractor, subcontracted with John Davies, an electrician, to perform work on one of Raanan's construction projects. A dispute arose about the work to be performed. On March 17, 1993, Raanan filed a claim against Davies with the Contractor's State License Board. Two weeks later, Raanan filed a Chapter 7 bankruptcy petition. He did not, however, list his contingent claim against Davies as an asset nor disclose the pending State License Board proceedings. Nor was Davies listed as a creditor. In May 1993, the Board referred the claim to binding arbitration. Davies then submitted his own claim against Raanan to the arbitrator, who conducted a hearing in June 1993. Davies prevailed. The arbitrator awarded him $12,500 on his counterclaim, and denied any recovery to Raanan.

Raanan's discharge was entered on August 8, 1993. In December 1993, Davies applied to the state Superior Court for an order confirming the $12,500 award. In response, Raanan filed a "Notice of Bankruptcy Stay" which for the first time disclosed the filing of his bankruptcy petition on March 31, 1993.

Relying upon the notice of the automatic stay, Raanan did not appear at the hearing on Davies' application for confirmation of the arbitration award. The Superior Court entered a judgment confirming the arbitrator's decision despite the notice of the stay. Davies contends that the effect of the bankruptcy filing was specifically addressed during the hearing and that the judge orally ruled that this debt was excepted from discharge under § 523(a)(3) of the Bankruptcy Code. Raanan does not dispute this contention, but the state court's order makes no express reference to any such determination.

When Davies attempted to enforce his judgment by applying to the State Contractor's License Board to suspend Raanan's license, Raanan filed a Motion for an Order to

---

1. All statutory references herein are to 11 U.S.C. §§ 101–1330 (1994) (the "Bankruptcy Code"), unless otherwise noted.

Show Cause re Contempt in the Bankruptcy Court, alleging that Davies' continued collection efforts violated the discharge injunction embodied in 11 U.S.C. § 524.

## II. DISCUSSION

### A. *Omitted Creditors and the Scope of Discharge*

■ Raanan argues that this creditor's debt was discharged even though he neither listed Davies as a creditor nor scheduled the debt nor gave Davies actual notice of the bankruptcy case. His argument relies almost exclusively upon *In re Beezley*, 994 F.2d 1433 (9th Cir.1993).

In *Beezley*, the debtor sought to reopen his Chapter 7 bankruptcy case in order to schedule a previously unlisted debt. The debtor assumed that amendment of the schedules was necessary to discharge the debt. The bankruptcy court refused to reopen his case because the debtor had intentionally omitted the debt. The Bankruptcy Appellate Panel affirmed on the same grounds, following its decision in *In re Bowen*, 102 B.R. 752 (9th Cir. BAP 1989). The debtor appealed.

The Ninth Circuit Court of Appeals affirmed, holding that the denial of the motion to reopen was not an abuse of discretion. The circuit court, however, rejected the analysis used by the lower courts. Instead, it held that:

> After such a [no asset, no bar date Chapter 7] case has been closed, dischargeability is unaffected by scheduling; amendment of Beezley's schedules would thus have been a pointless exercise.

994 F.2d at 1434. Under this analysis, the debtor's motive in omitting the debt would be irrelevant to the decision whether to reopen a case for purpose of adding that claim to the schedules.

The issue in *Beezley* was how to apply § 523(a)(3) in a no-asset case in which no claims bar date was set. Section 523(a)(3) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, *timely filing of a proof of claim,* unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, *timely filing of a proof of claim and timely request for a determination of dischargeability of such debt* under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request. . . .

(emphasis added).

Because *Beezley* was a no-asset case, no claims bar date was ever set. Federal Rule of Bankruptcy Procedure 2002(e) permits the clerk of the court to direct creditors not to file claims in no-asset cases.[2] Rule 2002(e) provides:

> In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

If no bar date is set, the time to file a claim never expires. The *per curiam* opinion in *Beezley* concluded that, under such circumstances, unscheduled debts are automatically discharged if they fall within § 523(a)(3)(A), and automatically *not* discharged if they fall within § 523(a)(3)(B). Belatedly reopening the case to add an omitted debt does not

---

**2.** All rules references herein are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

affect the scope of the discharge. 994 F.2d at 1434.

The bankruptcy court's refusal to reopen was premised upon its finding that the debtor knowingly omitted the debt in question. Its ruling relied upon the rationale set forth in the leading circuit case on the subject, *In re Stark,* 717 F.2d 322 (7th Cir.1983). *Stark* held that a case should be reopened to discharge an omitted debt only if the debt was inadvertently omitted, but should not be reopened if the debtor's failure to schedule that debt was due to intentional design or fraud. Under this analysis, the debtor has the burden to show that the omission was inadvertent. Such a showing would warrant reopening the case, adding the omitted debt, and including the debt within the scope of the discharge. *Stark* was also a no-asset, no-claims-bar-date case.

Until *Beezley,* all subsequent circuit opinions had followed *Stark,* although bankruptcy and district court decisions were typically conflicting. In *In re Stone,* 10 F.3d 285, 288 (5th Cir.1994), the rulings below had held that an omitted claim was not dischargeable, despite the parties' stipulation that the omission was inadvertent. In reversing the judgment, the Fifth Circuit emphasized the unbroken line of circuit authority that it was endorsing:

> As our distinguished colleagues in the Sixth, Seventh, and Eleventh Circuits have determined, a court should not discharge a debt under section 523(a)(3) if the debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive. *Soult,* 894 F.2d at 817; *Baitcher,* 781 F.2d at 1534; *Rosinski,* 759 F.2d at 541; *Stark,* 717 F.2d at 323–34. If the failure is attributable solely to negligence or inadvertence, however, equity points toward discharge of the debt.

10 F.3d at 291. *Accord, In re Soult,* 894 F.2d 815, 817 (6th Cir.1990) (affirming the reopening of the case to add a negligently omitted claim, on the grounds that otherwise the discharge does not bar a subsequent action by unscheduled creditor without notice of the bankruptcy); *In re Baitcher,* 781 F.2d 1529, 1534 (11th Cir.1986) (motive in omission is determinative of action under § 523(a)(3)

where no other grounds exist for nondischargeability); *In re Rosinski,* 759 F.2d 539, 541–42 (6th Cir.1985) (reversing denial of motion to reopen, holding that leave should have been granted to amend schedules to add inadvertently omitted creditor). *Compare, e.g., American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480 (N.D.Ind.1992) (reopening the case has no legal effect upon discharge); *In re Mendiola,* 99 B.R. 864, 867 (Bankr. N.D.Ill.1989) (Barliant, B.J.) ("Since Section 523(a)(3)(A) does not apply, the debts the Debtor seeks to add to the schedules are already discharged, even though they were not listed or scheduled.").

Unlike *Stark, Beezley* involved an intentionally omitted creditor. The Ninth Circuit *per curiam* opinion did not, however, disapprove of *Stark.* Nor did it seek to distinguish that case or its progeny on factual nor, indeed, upon any grounds. Mysteriously, it failed to cite or discuss any of the circuit decisions on this issue. It merely held that refusing to reopen a case for the sole purpose of amending the schedules to add an omitted creditor was not an abuse of discretion, because the amendment by itself would not have any effect upon whether the claim was in fact covered by the discharge. Also remarkable is the *per curiam* opinion's express reservation of the question "whether the omitted debt was or was not discharged." 994 F.2d at 1434 n. 1.

By contrast, Judge O'Scannlain's concurring opinion analyzes the leading cases in detail, then boldly asserts that:

> *Stark* misstates the law. *Stark* treats the question whether to reopen a closed no-asset, no-bar-date case to amend the schedule of creditors as equivalent to the question whether to permit discharge of the omitted debt. But, again, scheduling, per se, is irrelevant. The legal standard articulated in *Stark* is simply incorrect, and I would disapprove reliance on it in the bankruptcy courts of this circuit.

994 F.2d at 1438–39. Moreover, Judge O'Scannlain emphasized that the omitted claim *is* discharged, unless the creditor initiates a belated action to determine the debt nondischargeable under § 523(a)(3)(B). *Id.* at 1441. Such an action would have to prove

that the debt would have been nondischargeable under the fraud and intentional misconduct provisions of §§ 523(a)(2), (4), or (6), if proper notice had been given in time to permit the filing of a timely complaint under § 523(c). Why the other members of the *Beezley* panel were unwilling to resolve these important questions is not disclosed in either of the opinions.

Thus, the *holding* of *Beezley* does not really tell the Ninth Circuit bankruptcy courts what to do with intentionally omitted claims, like the one at issue in the present case. *Beezley* just says that reopening closed cases to allow omitted claims to be added to the schedules does not by itself have any operative legal effect upon their discharge status.

## B. *Equitable Estoppel and the Discharge Injunction*

As in *Beezley,* the present case is a no-asset Chapter 7 case. Therefore, consistent with Rule 2002(e), the § 341(a) notice that was sent to all scheduled creditors in the case stated:

> At this time there appear to be no assets available from which payment may be made to unsecured creditors. Do not file a proof of claim until you receive notice to do so.

Because no claims bar date was set, the § 523(a)(3)(A) exception to discharge was not triggered with respect to the claim at issue. As debtor argues, *Beezley* stands for the proposition that even intentional failure to schedule a claim and provide timely notice to a creditor will not result in nondischargeability under this subsection. Nor can this claim qualify for exception from discharge via a belated nondischargeability determination under § 523(a)(3)(B). It is undisputed that the claim at issue here is contractual in nature. If this creditor had received timely notice of the case, he would have not had any grounds to file a nondischargeability complaint under § 523(c). Debtor argues therefore that this claim is discharged, regardless of the reason for the omission of the debt.

The creditor, however, protests that *Beezley* cannot be read to have eliminated *sub rosa* all equitable estoppel defenses to a debtor's belated assertion of the discharge bar. The debtor's vice in this case is not merely his intentional omission of this debt from the schedules, but also his post-petition conduct in litigating his claim and the counterclaim to judgment without disclosing the pendency of the bankruptcy case. If Davies had known about the pending bankruptcy, he and the arbitrator would have both been on notice—before the litigation proceeded—that the Chapter 7 trustee might well be the real party in interest in prosecuting the claim against Davies, and that the automatic stay would preclude any counterclaim or collection actions or judgments against Raanen personally.

■ The principle of equitable estoppel applies in bankruptcy-related matters. In *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555 (9th Cir.1992), a former bankruptcy debtor sued the bank in the United States District Court on lender liability claims that arose out of events which occurred prior to and during the bankruptcy. The principal of the debtor had sufficient facts to know that the potential cause of action existed before the confirmation of the Chapter 11 plan. The debtor, however, did not amend its schedules or disclosure statement to identify this contingent asset. Moreover, the confirmed plan was predicated, in part, upon settlement of the bank's secured claim against the estate. *Id.* at 557. The Ninth Circuit held that "[f]ailure to give the required notice estops [the debtor] and justifies the grant of summary judgment to the defendants." *Id.* *Cf. Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) ("There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.").

■ The doctrine of equitable estoppel precludes a party from asserting rights that would otherwise have been available. Estoppel arises either because that party has taken inconsistent positions or has remained silent in the face of a duty to speak, with resulting adverse consequences for an opposing party. As set forth in *United States v. Georgia–Pacific Co.,* 421 F.2d 92, 95–96 (9th

Cir.1970), the four essential elements of equitable estoppel are:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Id.* at 96 (quoting *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960)).

This Court is mindful of the implication of *Beezley* that "the *reason* why a debt is omitted from the bankruptcy schedules [is not] relevant to the discharge of that debt." 994 F.2d at 1439 (O'Scannlain, J., concurring). The debtor's motive in omitting a creditor is relevant, however, to the defense of estoppel, for the party asserting the defense must establish that the party to be estopped intended his conduct to be acted upon. *Georgia–Pacific*, 421 F.2d at 96. As the Ninth Circuit stated:

> Many kinds of activities—or inactivity—on the part of a defendant may permit the defense of equitable estoppel to be asserted against him. Obviously conduct amounting to fraud would suffice to raise an estoppel against a defendant, but it is clear that conduct far short of actual fraud will also suffice. A party's silence, for example, will work an estoppel if, under the circumstances, he has a duty to speak.

*Id.* at 97.

Application of equitable estoppel is appropriate where a bankruptcy debtor's intentional failure to provide the required notice results in the unsuspecting creditor proceeding with litigation at significant additional cost of time and money. The creditor in this case has established each element of the defense of equitable estoppel. Raanan was required under the Bankruptcy Code to list all assets, including any claims against third parties, and to be forthcoming with the trustee. He was also required to list all claims against him, including disputed, unliquidated ones like Davies'. Yet Raanan did not inform Davies of the pending bankruptcy and did not amend his schedules when he lost at the

arbitration. Nor, like the debtor in *Hay*, did he schedule this contingent claim as an asset of the estate. Instead, he remained silent concerning his pending bankruptcy, choosing to engage in a course of costly litigation.

Raanan testified that he did not list Davies as a creditor because he thought that the arbitrator's award should not have been entered against him personally, but against his construction company. He does not, however, contend that he was unaware that the award and subsequent judgment actually created personal liability. The creditor contends that Raanan omitted Davies because he was hoping to prevail upon his affirmative claim and hide any recovery from the bankruptcy trustee. This dispute about motive need not be resolved: even under Raanan's version, the failure to schedule Davies was intended to permit the debtor to litigate the claim without the required oversight from the trustee or the bankruptcy court. The Court does not find Raanan's explanation of the omission from the bankruptcy schedules to be credible. By failing to list Davies as a either a creditor or an account debtor, Raanan concealed the fact that he had filed a bankruptcy petition, which was material to the decision of whether and how the dispute with Davies was to be litigated.

It is undisputed that Davies had no actual knowledge of the bankruptcy. Davies relied on the debtor's silence by hiring an attorney and asserting in the arbitration a counterclaim which was clearly subject to discharge. He expended his time and money to reduce his claim to judgment through the arbitration process and the state court proceeding. And he has been forced to defend his actions before this Court. This Court will not now tell Davies that his debt has been discharged, for the debtor failed to notify him of that possibility in time for Davies to cut his losses.

## C. *Equitable Estoppel and Annulment of the Automatic Stay*

The assertion and litigation of Davies' counterclaim would ordinarily have been stayed by the automatic stay, and would have required relief from stay to be pursued dur-

ing the case. Of course, Davies did not know that an automatic stay was in effect. Raanen argues that Davies' judgment is void, because entered in violation of the stay. In *In re Shamblin*, 878 F.2d 324 (9th Cir.1989), the Ninth Circuit expressly held that actions in violation of the stay are void, not merely voidable, thereby overruling several recent Bankruptcy Appellate Panel decisions to the contrary. As a result, the post-petition tax sale at issue in that case was invalid *ab initio*. The appellate court recognized, however, that in appropriate circumstances the bankruptcy court has the discretion to annul the stay retroactively. *Shamblin* cautions that "[a]ny equitable exception to the automatic stay should be narrow and applied only in extreme circumstances." *Id.* at 327.

*Shamblin* cites *Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984), as an example of such extreme circumstances. *Shamblin*, 878 F.2d at 327. In *Matthews*, the debtor had scheduled a disputed creditor in his Chapter 13 case, but proceeded to litigate the state court lawsuit despite the automatic stay. Only after he lost on the creditor's counterclaim did the debtor seek to invalidate the judgment as violative of the automatic stay. Holding that equitable estoppel applied, the Seventh Circuit explained:

> [A]lthough we need not decide if this factor alone would be enough to suspend the application of Section 362, our decision to allow equitable considerations to override the serious concerns of that section rests in large measure on the fact that Matthews initiated the state court proceedings. Matthews sought a judicial determination that he had an interest in the land sale contract. Rosene countered with his claim that Matthews had no interests. Matthews risked facing that claim. Once the [state] circuit court determined that Matthews had no interests, equity prevents him from seeking the protection of the bankruptcy laws to avoid the [state] circuit court order.

*Matthews*, 739 F.2d at 252.

Raanen's conduct here is remarkably similar to that of the debtor in *Matthews*. Raanan faced the risk of a counterclaim when he submitted his claim to the State Contractor's License Board two weeks before he filed his bankruptcy petition. Raanan then litigated his claim against Davies to resolution in binding arbitration without notifying Davies of his bankruptcy. Only after he lost did he raise the defense of bankruptcy and argue that the adverse judgment violated the automatic stay. The circumstances in this case are analogous to those in *Matthews* and justify annulment of the stay and validation of the judgment.

### D. *Equitable Estoppel and the State Court Determination of Scope of the Discharge*

Debtor now concedes that the state court in this case had jurisdiction to determine the dischargeability of this debt. 28 U.S.C. § 1334(b) (1988). The Advisory Committee's Note to Bankruptcy Rule 4007(b) states unequivocally:

> Jurisdiction over this [§ 523(a)(3)] issue on these debts is held concurrently by the bankruptcy court and any appropriate non-bankruptcy forum.

It is undisputed that Raanen knew about the hearing and that his failure to appear was a conscious strategic choice, albeit based upon erroneous legal advice as to the state court's jurisdiction. Davies contends that, at the hearing to confirm the arbitration award, the state court specifically addressed the effect of the bankruptcy filing on its ability to enter a judgment in favor of the creditor. The state court confirmed the arbitrator's award, but its order does not reveal the basis for any ruling about the effect of the bankruptcy. The transcript of the hearing was not part of the record here. The notice of bankruptcy had been filed in the state court proceeding, so that court's ruling implies a determination that the debt was not discharged in the bankruptcy. If that decision was erroneous or not fully considered, it is up to the state courts—not this Court—to determine whether any cause exists to set aside or modify a decision properly within the scope of their jurisdiction.

### III. CONCLUSION

Davies has established all the elements of the defense of equitable estoppel. This defense "is a rule of justice which, in its proper

field, prevails over all other rules." *Georgia–Pacific* 421 F.2d at 96. Therefore, the Court finds an exception to the *Beezley* doctrine that in a no-asset case unscheduled debts are discharged and concludes that Raanan is estopped from asserting that Davies' debt has been discharged. Under the circumstances, Davies' continued enforcement of that claim after he received belated notice of the bankruptcy did not violate the § 524 discharge injunction. The same equitable considerations warrant annulment of the automatic stay and validation of the arbitrator's award and state court judgment.

This opinion constitutes findings of fact and conclusions of law pursuant to Rule 7052.