Filed 5/18/16  Reese v. Mingramm CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| VICKY REESE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SERGIO MINGRAMM,<br><br>    Defendant and Respondent. | 2d Civil No. B262021<br>(Super. Ct. No. 1417193)<br>(Santa Barbara County) |

Vicky Reese appeals contending that 1) her $538,000 judgment against Sergio Mingramm (respondent)was not discharged in a Chapter 7 no-asset bankruptcy and 2) her claim for attorney fees, costs and interest based on respondent's post-petition conduct was not subject to the bankruptcy discharge.  (11 U.S.C.S. section 524(a)(1).)  We conclude otherwise and affirm the trial court's rulings.

*Procedural History*

On August 30, 2011, respondent struck appellant's car at an intersection, injuring her.  Respondent filed a Chapter 7 no-asset bankruptcy petition in 2012 that failed to list appellant as a creditor.  He did not tell his bankruptcy attorney about the auto accident and assumed that it had no bearing on the bankruptcy.  On July 30, 2012, the bankruptcy court issued a bankruptcy discharge.

Appellant filed suit in state court for personal injuries on May 17, 2013.  Respondent did not tell appellant, his insurer (Allstate), or trial counsel about the

bankruptcy. Before trial, appellant made a $250,000 offer to compromise for policy limits that was rejected by respondent and Allstate. (Code Civ. Proc., § 998.)[1] On September 30, 2014, the jury returned a $538,000 verdict for appellant.

A week later, on October 7, 2014, respondent's bankruptcy attorney informed appellant's trial attorney about the bankruptcy. Respondent's insurer, Allstate, tendered $250,000 and demanded a full satisfaction of the judgment. Rejecting the tender, appellant filed a motion to declare the judgment nondischargeable, a motion for fees and costs pursuant to section 2033.420, and sought attorneys fees, costs, and interest based on respondent's post-petition conduct (i.e., failure to disclose the bankruptcy and admit requests for admission of facts).[2] Denying the motions, the trial court found that respondent was not equitably estopped and that $250,000 was unconditionally owed by Allstate. Once the policy limits were paid, respondent and Allstate could request acknowledgment of satisfaction of judgment. (§§ 724.010-724.030.)

*Fraud*

Appellant claims that respondent fraudulently concealed the bankruptcy. The evidence shows that respondent filed the Chapter 7 petition for reasons unrelated to the accident. Respondent did not believe the personal injury claim had any bearing on the bankruptcy and assumed it would be resolved by Allstate within policy limits. The evidence supports the finding that there was no fraudulent concealment.

On appeal, we are precluded from reweighing the evidence or determining witness credibility. (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503.) It is settled that the trial court had concurrent jurisdiction to decide whether the personal injury judgment was a dischargeable debt. (28 U.S.C.S. § 1334(b); *Siragusa v. Siragusa* (*In re Siragusa*) (9th Cir. 1994) 27 F.3d 406, 408; *Flores v. Kmart Corp.* (2012) 202

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] Appellant filed a $39,404.56 memorandum of costs that was unopposed but not ruled on. As we shall discuss, the bankruptcy discharge relieves Mingramm of personal liability for the balance of the judgment and appellant's attorney fees and costs.

2

Cal.App.4th 1316, 1325.)  Federal bankruptcy law (11 U.S.C.S. section 524(a)(1)) provides that a bankruptcy discharge voids any judgment to the extent the judgment is a determination of the debtor's personal liability with respect to a discharged debt.  The Chapter 7 no-asset bankruptcy discharges the pre-petition debt regardless of whether Mingramm listed appellant's personal injury claim in the bankruptcy petition.  (*Beezley v. California Land Title Co.* (*In re Beezley*) (9th Cir. 1993) 994 F.2d 1433, 1434; *White v. Nielsen* (*In re Nielsen*) (9th Cir. 2004) 383 F.3d 922, 924-926*; Zirnhelt v. Madaj* (*In re Madaj*) (6th Cir. 1998) 149 F.3d 467, 472.)

Because federal law discharges respondent's personal liability on the debt, appellant may only recover on respondent's auto insurance policy (the Allstate policy) up to policy limits.  State law provides that the insured's insolvency or bankruptcy does not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of the policy.  (Ins. Code, § 11580, subd. (b)(1).)  It is a two-step procedure.  Appellant must first sue respondent to establish liability.  (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 72.)  Once a judgment is rendered, appellant must sue Allstate on the policy but Allstate's liability is limited to the $250,000 policy limit.  (*Id.*, at pp. 72-73.)  Here a $538,000 judgment was entered against respondent and Allstate tendered a $250,000 check for policy limits.  The trial court did not err in finding that the Chapter 7 bankruptcy discharged respondent from personal liability.  (*Beezley v. California Land Title Co.* (*In re Beezely), supra*, 994 F.2d at p. 1434.)

*Equitable Estoppel*

Citing *In re Raanan* (C.D.Cal.1995) 181 B.R. 480, appellant argues that respondent is equitably estopped from asserting the bankruptcy discharge.  The availability of estoppel to circumvent a bankruptcy discharge is a question of law that is reviewed de novo.  (*Lone Star Sec. & Video, Inc. v. Gurrola* (*In re Gurrola*) (9th Cir. BAP 2005) 328 B.R. 158, 162.)  "Once it is determined that estoppel is available as a matter of law, the decision whether to apply a particular estoppel doctrine is reviewed for abuse of discretion. [Citations.]"  (*Id.*, at pp. 162-163.)

3

In *Raanan*, a general contractor (Raanan) filed a claim against an electrical subcontractor (Davies) with the Contractor's State License Board (CSLB). Before the claim was arbitrated, Raanan filed a Chapter 7 bankruptcy petition but did not list his claim against Davies on the petition. After the CSLB referred the claim to binding arbitration, Davies made a counterclaim against Raanan. The arbitrator denied Raanan's claim and awarded Davies $12,500. When Davies petitioned the state court to confirm the $12,500 arbitration award, Raanan, for the first time, disclosed the bankruptcy petition. The superior court confirmed the arbitration award and entered judgment for Davies. When Davies tried to collect on the judgment, Raanan filed an OSC re contempt against Davies for violating the bankruptcy discharge injunction. (11 U.S.C.S. § 524(a)(2).) The bankruptcy court found that Raanan intentionally failed to schedule the state claim in his bankruptcy petition and was equitably estopped. "The debtor's vice in this case is not merely his intentional omission of this debt from the schedules, but also his post-petition conduct in litigating his claim and the counterclaim to judgment without disclosing the pendency of the bankruptcy case." (*In re Raanan, supra*, 181 B.R. at p. 484.)

In *Lone Star Sec. & Video, Inc. v. Gurrola* (*In re Gurrola*), *supra*, 328 B.R. 158, the Ninth Circuit Court of Appeals disapproved *Raanan* because it did not address the anti-waiver provision of 11 U.S.C.S. section 524(a) which bars the use of equitable estoppel theories to revive a prepetition debt. (*Id.*, at p. 174.) "We disagree with the *Raanan* decision in three respects. First, the penalty of reviving the debt does not fit the crime. The real problem was that the debtor had prosecuted a cause of action that was the property of the [bankruptcy] estate and, hence, lacked standing. Such misconduct qualifies as the sort 'bad faith' violation of the litigation process that may warrant an award of attorney's fees under the court's inherent [power] . . . [Citations.] Second, the Bankruptcy Code is so specific with respect to a plethora of statutory nondischargeability theories that it does not admit of the nonstatutory, general equitable nondischargeability remedy that the *Raanan* court fashioned. Third, for reasons we have already explained, the anti-waiver provisions of § 524(a) forbid the use of such waiver theories to revive a

4

prepetition debt that is not otherwise nondischargeable and forbid a sanction of reviving the discharged debt." (*Ibid*.)

We conclude that *Gurrola* is the better rule and that equitable waiver principles do not revive the discharged debt. (See e.g., *Rooz v. Kimmel* (*In re Kimmel*) (9th Cir. BAP 2007) 378 B.R. 630, 638 [Chapter 7 discharge is absolute and not subject to an equitable exception based on postdischarge conduct].) Unlike *In re Raanan*, respondent did not intentionally conceal the bankruptcy or prosecute a claim against appellant. Equitable estoppel requires intentional or purposeful misconduct and detrimental reliance which is lacking here. (See e.g., *Gaines v. Fidelity National Title. Ins. Co.* (2016) 62 Cal.4th 1081, 1097.) Appellant claims that she would have analyzed the case differently had she known about the bankruptcy. Appellant, however, was procedurally required to bring an action against respondent to establish liability before she could recover on the Allstate policy. (*Boyer v. Jensen, supra*, 129 Cal.App.4th at p. 73.) The trial court found that "Allstate did not agree to settle for $250,000, so the trial was necessary in any event." Appellant was not damaged by the nondisclosure.

Appellant argues that the fraud non-dischargeability exception (11 U.S.C. S. § 523(a)(2)(A)) renders the judgment nondischargeable. Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is not dischargeable. The creditor seeking to prove nondischargeability under this section must establish: (1) a misrepresentation of fact by the debtor; (2) that the debtor knew at the time to be false; (3) that the misrepresentation was made with the intention of deceiving the creditor; (4) that the creditor relied on the misrepresentation; and (5) which was the proximate cause of damage to the creditor. (*Cossu v. Jefferson Pilot Sec. Corp.* (*In re Cossu*) (9th Cir. 2005) 410 F.3d 591, 596.) None of those elements were factually established. Appellant's fraud theory, like the equitable estoppel contention, fails on the facts and the law.

*Policy Coverage for "Additional Payments"*

Appellant argues that the "Additional Payments" clause in the policy requires Allstate to pay court costs and postjudgment interest in addition to the $250,000 policy limit.[3] Appellant did not raise the argument below and is precluded from raising it for the first time on appeal. (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399.) On the merits, the argument fails because the "Additional Payments" provision is part of Allstate's defense obligation to its insured. The policy states: "When **we** defend an insured person under this part, **we** will pay" $50 a day to that person for loss of wages or salary to attend hearing or trials to defend against a bodily injury suit, "court costs for defense," and "[i]nterest accruing on damages awarded. . . . *We will only pay interest on damages not exceeding our limits of liability*." (Italics added.) The policy provision to pay "court costs for defense" and interest is a function of Allstate's defense obligation not its indemnity obligation. (See *Prichard v. Liberty Mutual Ins. Co.* (2000) 84 Cal.App.4th 890, 911-912 [costs awarded against the insured in a personal injury suit not part of the insurer's indemnity obligation]; *San Diego Housing Com. v. Industrial Indemnity Co.* (2002) 95 Cal.App.4th 669, 693 [same; costs and interest]; *Clark v. California Ins. Guarantee Assn.* (2011) 200 Cal.App.4th 391, 397-398 [same; costs and interest].) "In sum, a third party judgment creditor may not enforce an award of costs and interest in a[n Insurance Code] section 11580 direct action against the insurer." (*Id.*, at pp. 400-401.)

---

[3] Page 6 of the policy provides: "**Additional Payments Allstate Will Make** [¶] "When **we** defend an insured person under this part, **we** will pay: [¶] 1. up to $50 a day for loss of wages or salary if **we** ask that person to attend hearings or trials to defend against a **bodily injury** suit. **We** won't pay for loss of other income. **We** will pay other reasonable expenses incurred at **our** request. [¶] 2. court costs for defense. [¶] 3. Interest accruing on damages awarded. **We** will pay this interest only until **we** have paid, offered, or deposited in court the amount for which **we** are liable under this policy. **We** will only pay interest on damages not exceeding our limits of liability."

Assuming, arguendo, that Allstate is contractually required to indemnify for interest on an award for third party damages, it would only occur when the judgment and postjudgment interest do not exceed policy limits. Allstate's policy states that $250,000 is "the maximum [Allstate] will pay for any single **auto** accident." It states "this limit will be the maximum amount of **Allstate's** liability for both **bodily injury** and property damage arising out of any one occurrence."

Insurance Code section 11580, subdivision (b)(2) provides that in a direct action against the insurer, appellant may obtain satisfaction of judgment up to the policy limit amount. (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68.) Appellant "'is in court as a beneficiary of the contract between the [insured] and [Allstate], and must bring her claim - the judgment - within the terms of that contract. [Citations.]' [Citation.]" (*San Diego Housing Com. v. Industrial Indemnity. Co., supra*, 95 Cal.App.4th at p. 679; *Rafeiro v. American Employers' Ins. Co.* (1970) 5 Cal.App.3d 799, 805.) Appellant cites no published opinion that a judgment creditor may bring a direct action against an auto insurer for costs and interest, over and above the policy limits, based on an "additional payments" or "supplemental payments" policy provision.[4]

Appellant cites an insurance treatise (Croskey et al., Cal. Practice Guide Insurance Litigation (The Rutter Group 2015) § 7:160.1, page 7A-76) for the rule that comprehensive general liability (CGL) policies obligate the insurer to pay costs taxed against the insured. But that is of no moment. Once Allstate pays appellant the $250,000

---

[4] Appellant's reliance on *State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274 is misplaced. There, a homeowner's policy provided that the insurer would pay "'interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.'" (*Id.*, at p. 289.) The court held that the interest provision in the policy was not governed by the supplemental payments provision to pay costs. (*Ibid*.) *Mintarsih* was not an Insurance Code section 11580 direct action and did not involve a judgment creditor trying to collect postjudgment interest over and above the policy limit.

policy limits, it has no duty to indemnify for taxable costs and postjudgment interest in excess of the $250,000. (*San Diego Housing Com. v. Industrial Indemnity Co., supra*, 95 Cal.App.4th at p. 689; *Clark v. California Ins. Guarantee Assn., supra*, 200 Cal.App.4th at p. 398.) We accordingly reject the argument that the Additional Payments clause in the policy requires Allstate to pay $250,000 policy limits plus attorney fees, interest, and costs taxed against Mingramm.

*Discovery Sanctions: Costs of Proof*

Appellant finally argues that she is entitled to costs of proof ($75,320 attorney fees) based on respondent's bad faith denial of the requests for admission on liability and damages. (§ 2033.420, subd. (a).) The trial court ruled that the motion for discovery sanctions was moot in light of the bankruptcy discharge. It also found that costs of proof damages, if any, are a discharged prepetition claim.

Appellant claims that the trial court is duty bound under section 2033.410 to award costs of proof of sanctions. We reject the argument because discovery sanctions are discretionary, not a matter of right. (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753; *Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864.) Costs of proof may be denied where the party responding to the request for admission had reasonable grounds to believe that he or she would prevail on the matter. (§ 2033.420, subd. (b)(3).) Here liability was contested and each party claimed the other entered the intersection on a red light. Based on conflicting witness statements and the state of appellant's injuries, the trial court impliedly found that respondent denied the requests for admission in good faith.

Appellant argues that discovery sanctions, if imposed, are based on post-petition conduct and nondischargeable. Federal law provides that a debtor may be liable for fees and costs where the debtor files a bankruptcy petition and voluntarily returns to the fray of litigation. (See *Boeing N. Am., Inc. v. Ybarra* (*In re Ybarra*) (9th Cir. 2005) 424 F.3d 1018, 1024; *Bechtold v. Gillespie* (*In re Gillespie*) (BAP 9th Cir. 2014) 516 B.R. 586, 591-592). That is not the case here. Respondent did not file a cross-complaint, seek damages, or take action to press the litigation forward.

8

Appellant further argues that respondent's discovery responses are "false or fraudulent" conduct under 11 U.S.C.S. section 727(a)(4)(A). This statutory exception to "dischargeability" is limited to fraudulent conduct in making a false statement in the debtor's schedule. (*Bank if India v. Sapru* (*In re Sapru*) (Bank. E.D.N.Y. 1991) 127 B.R. 306, 314; *In re Hirsch* (Bank. S.D. Fla 1981) 14 B.R. 59, 60-61.) Respondent's responses to the requests for admission were made after the bankruptcy proceeding was terminated. They cannot, as a matter of law, be treated as false statements made in or materially related to the bankruptcy proceeding.

*Conclusion*

Appellant's remaining arguments have been considered but merit no further discussion. Consistent with federal and state law, the trial court correctly found that the $538,000 judgment and any claim for attorney fees, costs and interest was discharged in the Chapter 7 no-asset bankruptcy. Allstate's duty to indemnify is limited to the $250,000 policy limits. (Ins. Code, § 11580, subd. (b)(1); *Clark v. California Ins. Guarantee Assn., supra*, 200 Cal.App.4th at p. 398; *Rafeiro v. American Employers' Ins. Co., supra*, 5 Cal.App.3d at p. 805.)

The judgment is affirmed. Appellant is to pay costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


9

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Myers, Widders, Gibson, Jones & Feingold, Dennis Neil Jones; Law Offices of Bradford D. Brown, Bradford D. Brown, for Plaintiff and Appellant.

Pollak, Vida & Fisher, Daniel P. Barer, Charles P. Wessler, for Defendant and Respondent.