In re BARTON BUSINESS PARK ASSOCIATES, Debtor.

BARTON BUSINESS PARK ASSOCIATES, Plaintiff and Counterclaim Defendant,

v.

Joe O. ALEXANDER, Defendant and Counterclaimant.

Joe O. ALEXANDER, Third–Party Plaintiff,

v.

Frank CIOTTI, Third–Party Defendant.

Bankruptcy No. 289–03310–C–11.

Adv. No. 290–0199.

United States Bankruptcy Court, E.D. California.

Sept. 10, 1990.

William J. Coyne, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for Barton Business Park Associates.

Robert S. Bardwil, Bardwil & Dahl, Sacramento, Cal., for Frank Ciotti.

Robert T. Mees, Jr., Mees & Lester, Sacramento, Cal., for Joe O. Alexander.

## MEMORANDUM DECISION ON MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS

CHRISTOPHER M. KLEIN,
Bankruptcy Judge:

This is a joint motion by the plaintiff and by the third-party defendant to compel the defendant/third-party plaintiff to answer questions that he refused to answer during his deposition because his counsel objected that the questions were irrelevant and instructed him not to answer. No privilege was asserted and no motion to terminate or limit the examination was made. The motion to compel will be granted. Expenses, including attorney's fees, will be awarded against the counsel who instructed that the questions not be answered.

This is a bankruptcy adversary proceeding in which the federal civil discovery rules apply. Fed.R.Civ.P. 26–37; Bankr.R. 7026–37. I write to make clear that there is no difference in the application of those rules between the bankruptcy courts and the district courts and to illustrate the risks that a counsel faces in deposition practice when instructing a witness not to answer on relevancy grounds.

### 1. *The Nature Of The Litigation.*

Plaintiff, Barton Business Park Associates ("Barton Business Park"), is a California limited partnership and is the debtor in this chapter 11 case. Defendant, Joe O. Alexander ("Alexander"), was the general partner of Barton Business Park. Third-party defendant, Frank Ciotti, succeeded Alexander as general partner.[1]

1. I have *sua sponte* redesignated Alexander's pleadings to conform with the applicable categories under federal civil procedure even though Alexander did not comply with applicable federal procedure. He followed California civil procedure when he filed a "Cross-complaint" that named Barton Business Park and Frank Ciotti as "Cross-defendants." California civil procedure *does not* apply in federal courts, including federal bankruptcy courts.

In federal civil practice, a defendant's claim against a plaintiff is asserted by way of a counterclaim, and a defendant's claim against a person who is not already a named party is asserted by way of a third-party complaint. Fed.R.Civ.P. 13–14; Bankr.R. 7013–14. In this instance, Alexander's misnomers do not raise significant procedural difficulties. Frank Ciotti's potential defense based upon failure to be served a summons with the third-party complaint was waived when he filed an answer that did not raise that defense. Fed.R.Civ.P. 12(h); Bankr.R. 7012.

Nobody should be misled into thinking that state civil rules apply in federal courts or that the court will always rescue counsel from the

The litigation centers around whether Alexander breached his fiduciary duties as general partner or, conversely, whether he is entitled to share in the distribution under plaintiff's plan of reorganization. Barton Business Park seeks a money judgment based upon a secret profit Alexander allegedly received when acquiring real property for the debtor partnership. Alexander's counterclaim and third-party claim are based upon his contention that the partnership and the current general partner are trying to beat him out of his due. The defenses to Alexander's claim call into question all of his dealings regarding the partners and the partnership in 1987.

## 2. The Disputed Questions.

At the deposition, Alexander testified that in 1987 his financial condition declined, and that one reason for that decline was that some of his properties had less equity than he thought. This motion to compel focuses upon whether Alexander can be interrogated about details of that decline and about the accuracy of a financial statement that he prepared in 1987.[2]

## 3. Scope Of Discovery.

■ The applicable law is straightforward and is well known in federal practice. All of the federal civil discovery rules apply in bankruptcy adversary proceedings.[3] The rules regarding scope of discovery, motions to terminate or limit examination, and motions to compel discovery are pertinent here. Fed.R.Civ.P. 26(b), 30(d), and 37(a); Bankr.R. 7026, 7030, and 7037.

The disputed questions and the anticipated line of questions are plainly within the scope of discovery on the issues raised in connection with Alexander's counterclaim and third-party complaint, regardless of whether they are relevant to the secret profit claim against Alexander. That counteroffensive has prompted equitable defenses that place the accuracy of Alexander's representations about his financial status squarely in question. The questions that are in dispute appear to be reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1); Bankr.R. 7026.

## 4. Motion To Compel Under Rule 37(a).

■ Because the questions are within the scope of discovery, they must be answered, unless the court is persuaded that the circumstances excuse an answer. Fed. R.Civ.P. 37(a)(2); Bankr.R. 7037. No extenuating circumstances suggest themselves or have been suggested by the parties.

MR. MEES: That's correct.

Q. Were any of the other properties on this second page of Exhibit 30—did you actually not have title to any of them?

A. Again, it looks like we are answering this—am I to proceed on this?

MR. MEES: As to other properties other than Barton?

MR. COYNE: Yes.

MR. MEES: Then the same objection that I had before. I'll instruct him not to answer. [colloquy among counsel omitted.]

MR. COYNE: I want to be sure I understand what your objection is and what your instruction is to your client.

Are you going to instruct him not to answer any questions concerning the accuracy of his financial statement?

MR. MEES: That's correct.

---

difficulties occasioned by such mistakes. The parties have been *sua sponte* redesignated to conform to federal practice in this instance, because the pleadings do not otherwise offend federal procedure and are to be construed liberally so as to achieve just, speedy, and inexpensive determination of the action. Fed.R. Civ.P. 1; Bankr.R. 1001. If a party were prejudiced by the redesignation, the result might be different.

2. The contested questions include the following:

Q. Okay. And specifically on this schedule, Page 2 of Exhibit 30, which of the properties declined in value or were of less value than you thought?

MR. MEES: I object to the question. I don't see any relevancy to the question at all.

[colloquy among counsel omitted.]

MR. COYNE: Are you going to instruct him not to answer?

MR. MEES: Yes.

MR. COYNE: You will instruct the client not to answer any questions relating to the change in his financial condition between July and September of 1987?

3. Bankr.R. 7026–37. They also apply (except Federal Rule of Civil Procedure 27) in bankruptcy "contested matters"—i.e. motions. Bankr.R. 9014.

It is no defense to a motion to compel answers to deposition questions that the examining counsel asked only one or two questions and, upon encountering a stone wall, elicited from counsel that the entire line of questioning would receive similar treatment. Alexander's insistence that a motion to compel can only be made with respect to questions that actually are asked is wrong: the deponent has no right to convert a deposition upon oral testimony (Fed.R.Civ.P. 30) into a deposition upon written questions (Fed.R.Civ.P. 31).

The examining counsel can elect to make the record either (1) by establishing that the deponent actually refuses to answer a general line of questions or (2) by asking a series of questions that go unanswered. The alternative that winds up being more persuasive in an ensuing motion to compel will depend upon the facts and circumstances, which necessitates leaving the election to the judgment of examining counsel.

The examining counsel also has latitude in controlling the timing of when to bring a motion to compel: "When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order." Fed.R.Civ.P. 37(a)(2); Bankr.R. 7037. Here, rather than seeking a ruling during the deposition, counsel waited two weeks, until after they had a transcript.[4] Alexander's assertion that the two-week hiatus was somehow inappropriate lacks merit.

5. *Enforcing Objections Under Rule 30.*

A counsel who instructs a deponent not to answer a question on a ground other than privilege is on perilous ground. Questions that are merely objectionable as irrelevant must ordinarily be answered: "Evidence objected to shall be taken subject to the objections." Fed.R.Civ.P. 30(c); Bankr.R. 7030; 8 C. Wright & A. Miller, Federal Practice & Procedure § 2113 at n. 22.

A counsel who presumes to instruct a witness not to answer a question that is objected to usurps the court's power to rule on the objection:

It is not the prerogative of counsel, but of the court, to rule on objections. Indeed, if counsel were to rule on the propriety of questions, oral examinations would be quickly reduced to an exasperating cycle of answerless inquiries.

*Shapiro v. Freeman,* 38 F.R.D. 308, 311 (S.D.N.Y.1965). *Accord, e.g., United States v. Int'l Business Machines Corp.,* 79 F.R.D. 378, 381 (S.D.N.Y.1978).

The proper procedure to be pursued by counsel who does not think a question need be answered is, as prescribed in Rule 30(d), to demand that the deposition be suspended for the time necessary to make a motion for an order terminating or limiting the examination. Fed.R.Civ.P. 30(d); Bankr.R. 7030; *see, e.g., Ralston Purina v. McFarland,* 550 F.2d 967, 973–74 (4th Cir.1977); *First Tennessee Bank v. Federal Deposit Ins. Corp.,* 108 F.R.D. 640 (E.D.Tenn.1985); *Int'l Union of Elec. Radio & Machine Workers, AFL–CIO v. Westinghouse Elec. Corp.,* 91 F.R.D. 277 (D.D.C.1981); *Coates v. Johnson & Johnson,* 85 F.R.D. 731, 733 (N.D.Ill.1980).

The rules accord less latitude to the counsel who does not want a question answered than they accord to the examining counsel. Unlike a motion to compel, a motion to terminate or limit examination must be made "during the taking of the deposition." Fed.R.Civ.P. 30(d); Bankr.R. 7030. The failure of Alexander's counsel to comply with the proper procedure and to make such a motion places him at a tactical disadvantage—it seriously weakens the justification for declining to answer and supports an inference of improper stonewalling.

Where the proper procedure is followed, discovery works smoothly and inexpensively. There is a prompt resolution to the dispute before the deposition ends. No additional session is needed. A lawyer who thinks there is solid ground for not answer-

---

**4.** I entertain oral motions and hold telephone hearings during (preferably near the end of) depositions.

ing a question should not fear the expense award if the motion to terminate or limit examination is lost—at worst, such an award (which is not a "sanction") will be the few dollars associated with a brief telephone hearing with the judge.

### 6. *Award Of Expenses.*

The decision to grant the motion to compel necessarily raises the question of reasonable expenses incurred in obtaining the order, including attorney's fees. Such expenses are nominally mandatory unless the court finds that the opposition was substantially justified or that other circumstances make an award unjust. Fed.R. Civ.P. 37(a)(3); Bankr.R. 7037.

Although such awards are often described as sanctions, the presumption in favor of such awards makes them more in the nature of a cost of doing business in the arena of discovery disputes.[5] Although the court retains some discretion, it must make a specific finding in order to overcome the presumption in favor of expenses and to avoid making an award. The burden of persuasion is on the losing party to avoid assessment. 8 C. Wright & A. Miller, Federal Practice & Procedure § 2288 (1970). The expense awards serve a deterrent function by discouraging unnecessary involvement by the court in discovery. *Marquis v. Chrysler Corp.,* 577 F.2d 624, 641–43 (9th Cir.1978); 4A J. Moore & J. Lucas, Moore's Federal Practice ¶ 37.02[10–1] (1990).

I do not find that the opposition to the motion to compel was substantially justified and do not find that other circumstances would make an award of expenses unjust. Accordingly, expenses, including reasonable attorney's fees, will be awarded.

I have already afforded the parties an opportunity for a hearing on the question of award of expenses. Frank Ciotti has incurred attorney's fees of $144.00 in connection with this motion. Barton Business Park has incurred attorney's fees of

$485.00. The number of hours billed are reasonable and reflect sound billing judgment. The rates billed are consistent with rates prevailing in this market. *See In re Gire,* 107 B.R. 739, 743 (Bankr.E.D.Cal. 1989). The total expenses, including attorney's fees, awarded is $629.00.

The expense award is being made against the attorney who, on grounds of relevance, instructed the witness not to answer. Fed.R.Civ.P. 37(a)(4); Bankr.R. 7037. That attorney had signed the counterclaim and third-party complaint raising the issues that made the disputed inquiry relevant beyond cavil and is charged with knowing that it was within the scope of discovery. Instructing a witness not to answer when no privilege is being asserted is a disfavored practice that an attorney engages in at personal peril.

An appropriate order will issue.

---

**5.** Rule 37 is drafted to distinguish monetary "sanctions" from "expense awards." *Compare* Fed.R.Civ.P. 37(b)(2) *with* Fed.R.Civ.P. 37(a)(2).