**In re Paul Michael GURROLA, Debtor.**

**Lone Star Security & Video, Inc., Appellant,**

v.

**Paul Michael Gurrola, Appellee.**

**BAP No. CC–04–1143–KMoB.**
**Bankruptcy No. LA 96–31858–ER.**
**Adversary No. LA 03–01257–ER.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 17, 2004 at Pasadena, California.

Filed—June 20, 2005.

Before: KLEIN, MONTALI, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

Ignorance. Pure ignorance. The debtor was amazingly ignorant of the legal consequences of his bankruptcy discharge. The question is whether such ignorance is punishable by equitably estopping the debtor from relying on the discharge because he did not assert the discharge as a defense to entry of a postpetition judgment on a discharged debt. We hold that the bankruptcy discharge cannot be circumvented on equitable grounds.

The provision of 11 U.S.C. § 524(a) that a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ... whether or not such discharge is waived," and the concomitant statutory injunction, do not admit of an equitable exception and are self-executing. Any inappropriate postpetition conduct by the debtor that unfairly harms a creditor can be addressed by measures other than reviving the debt through an estoppel.

Accordingly, we AFFIRM the judgment refusing to estop the debtor from relying on his discharge to defeat a postpetition judgment rendered on a prepetition debt.

## FACTS

On May 15, 1996, Paul Gurrola contracted with Lone Star Security, Inc. (later renamed Lone Star Security and Video, Inc., hereafter, "Lone Star"), for a $650.00 installation of a security system in his residence in Los Angeles, California, and for monitoring service at $15.95 per month for 36 months.

Dissatisfied with the installation, and in a dispute over whether the price included a siren, Gurrola stopped payment on his $697.85 check that represented the installation and first three months of monitoring service. Although the total contractual obligation was $1,224.20 [= $650.00 + ($15.95 × 36 mos.)], Lone Star filed a small claims action against Gurrola on May 31, 1996, seeking $2,664.90, based on the $697.85 check and the "balance of the alarm monitoring contract."

Gurrola, acting pro se,[1] countered on June 26, 1996, by suing Lone Star for breach of contract and fraud. This action, *Gurrola v. Lone Star Security, Inc.*, Los Angeles County Municipal Court, No. 96K14098, effectively preempted the small claims suit.

On July 8, 1996, Gurrola, represented by counsel, filed a chapter 7 bankruptcy in which he accurately listed his Municipal Court action against Lone Star on the Statement of Financial Affairs as a suit pending when the bankruptcy was filed. Lone Star was not, however, separately scheduled as a creditor and, hence, was not on the notice list.

Gurrola did nothing to prosecute his Municipal Court action after he filed bankruptcy.

Unaware of the bankruptcy, on July 16, 1996, Lone Star, through attorney George M. Wallace, sent Gurrola an "offer" to settle if Gurrola would pay $2,550.00. Gurrola did not respond.

On August 6, 1996, Lone Star filed a $2,664.90 counterclaim and an answer in Gurrola's Municipal Court action.[2]

Then, on September 20, 1996, Lone Star obtained Gurrola's default after he did not respond to its $2,664.90 counterclaim.

Gurrola's bankruptcy discharge was entered on October 23, 1996. The bankruptcy case was closed on November 1, 1996, as a "no asset" case in which no claim filing deadline had been set.

At a November 1997 status hearing, not attended by Gurrola, the Municipal Court dismissed his complaint and set a default judgment hearing for March 12, 1998, on Lone Star's counterclaim.

When Gurrola learned of the default judgment hearing, and acquiescing in the dismissal of his complaint, he filed a motion to vacate default and defend against Lone Star's counterclaim.

In support of Gurrola's motion, state-court attorney Scott A. Meehan averred that, while "assisting" Gurrola during September 1996, he had been misled by the Municipal Court's default clerk into believing that no default would be entered.

At the default judgment hearing on March 12, 1998, the Municipal Court refused to vacate the default and entered a default judgment in favor of Lone Star for $2,725.20, plus $2,488.25 attorneys' fees, $499.62 interest, and $140.00 costs.

Gurrola did not mention the bankruptcy discharge before the default judgment was entered. Instead, he first told Mr. Meehan about the bankruptcy after the hear-

---

1. Under California procedure, a self-represented litigant is said to be acting "in pro per," and a claim by a defendant against a plaintiff is termed a "cross-claim." We use the terms common to general federal practice: "pro se" and "counterclaim." Cf. *Barton Bus. Park Assocs. v. Alexander (In re Barton Bus. Park Assocs.)*, 118 B.R. 776, 777–78 n. 1 (Bankr.E.D.Cal.1990).

2. Although our analysis renders the problem a red herring, the suspension by the California Secretary of State of Lone Star's corporate rights, powers, and privileges at the time of this filing puts a cloud on its judgment. 1 ANN TAYLOR SCHWING, CALIFORNIA AFFIRMATIVE DEFENSES §§ 18:17 & 39:38 (2005).

ing, which information Mr. Meehan communicated to Lone Star's counsel on March 13, 1998.

When Lone Star continued to assert that the default judgment remained enforceable, Gurrola engaged new bankruptcy counsel, Simon J. Dunstan, to enforce the bankruptcy discharge.

On May 8, 1998, Mr. Dunstan sent Lone Star's counsel a letter asserting that the discharge injunction rendered the postpetition judgment "void," and that the discharge could not be "waived." He demanded that Lone Star desist.

Lone Star stuck to its position that Gurrola was estopped because he had not earlier told Lone Star about the bankruptcy.

Lone Star also contended that it is the debtor's burden to enforce the discharge and instructed Gurrola that he should seek a court order to stop Lone Star from enforcing its judgment.

At a judgment debtor's examination under state law on August 9, 1999, Gurrola invoked the discharge. The Municipal Court refused to compel testimony without a bankruptcy court ruling on the impact of the discharge on the judgment. The examination was continued in order to afford time for a bankruptcy court ruling.

Nobody, however, asked the bankruptcy court to do anything until March 14, 2002, when Lone Star filed a motion to reopen the bankruptcy case. Gurrola opposed reopening, arguing the underlying merits of the discharge dispute. The bankruptcy court denied the request to reopen the case, ruling that Gurrola was not estopped from relying on his discharge. Lone Star appealed.

We affirmed the refusal to reopen the case but vacated the ruling on the discharge question because it is error to purport to resolve underlying substantive merits in a procedural motion to reopen a case. We explained that underlying substantive disputes should be resolved in a procedurally correct manner independent of the merely administrative reopening issue. *Lone Star Sec. & Video, Inc. v. Gurrola,* CC-02-1313-KBaP (9th Cir. BAP December 20, 2002).

On March 4, 2003, Lone Star filed an adversary proceeding seeking to block enforcement of Gurrola's discharge against it.

After trial, the bankruptcy court ruled that Gurrola was not estopped from relying on his discharge. It believed his testimony that he was ignorant of the scope of the discharge and did not intend to mislead Lone Star. Judgment was entered February 13, 2004. This appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUE

Whether a debtor can be equitably estopped from relying on the bankruptcy discharge.[3]

## STANDARD OF REVIEW

 The availability of estoppel doctrines to circumvent the statutory effect of the bankruptcy discharge is a question of law that we review de novo. *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.),* 283 B.R. 549, 554 (9th Cir. BAP 2002). Once it is determined that estoppel is available as a matter of law, the decision whether to apply a particular estoppel doc-

---

**3.** Denial of summary judgment was an issue listed but not argued and is abandoned. *Re-*

*sorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1402 (9th Cir.1995).

trine is reviewed for abuse of discretion. *Id.; accord, Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 780 (9th Cir. 2001).

## DISCUSSION

■ Lone Star's theory is one of confession and avoidance. It concedes that the debt was discharged and concedes that the debt is not excepted from discharge under 11 U.S.C. § 523(a).[4] It then argues that the discharge nevertheless can be circumvented on an estoppel theory based on postpetition events that do not operate to create new liability. This theory is misconceived.

That the present version of the federal bankruptcy discharge provides an absolute, nonwaivable defense is apparent from the language of the implementing statute, the history of the evolution of the discharge, and the case law.

## I

As with all statutory construction issues, we start with the statutory language. Here, we look at the statute describing the effect of the discharge.

## A

Bankruptcy Code § 524(a), enacted in 1978, provides:

§ 524. Effect of discharge

(a) A discharge in a case under this title—

(1) *voids any judgment* at *any time obtained,* to the extent that such judgment is a determination of the personal liability of the debtor with respect to

any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, *whether or not discharge of such debt is waived;*

(2) operates as an injunction against the commencement or continuation of an action, the employment for process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; [community property rule omitted].

11 U.S.C. § 524(a), *enacted by* Pub.L. 95–598, § 101, 92 Stat. 2549, 2592 (1978) (emphasis supplied).

Bankruptcy Code § 524(a) reenacted Bankruptcy Act § 14f, which was first enacted in 1970:

§ 14f. An order of discharge shall—

(1) declare that any judgment theretofore or thereafter obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to any of the following: (a) debts not excepted from the discharge under subdivision a of section 17 of this Act; (b) debts discharged under paragraph (2) of subdivision c of section 17 of this Act; and (c) debts determined to be discharged under paragraph (3) of subdivision c of section 17 of this Act; and

(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

Bankruptcy Act of 1898, § 14f, *codified at* 11 U.S.C. § 362(f), *enacted by* Pub.L. 91–467, § 3, 84 Stat. 990, 991 (1970).

---

**4.** "Lone Star does not dispute that its debt *was* included among the debts that were discharged in Gurrola's Chapter 7 case." Appellant's Reply Brief, at 3 (emphasis in original).

This concession recognizes that unscheduled debts in a so-called "no-asset, no-bar-

date" case are discharged. *White v. Nielsen (In re Nielsen),* 383 F.3d 922, 925–27 (9th Cir.2004), *adopting Beezley v. Cal. Land Title Co. (In re Beezley),* 994 F.2d 1433, 1435–40 (9th Cir.1993) (O'Scannlain, J., concurring).

### B

As a matter of "plain English," the language of § 524(a)(1), although circular with respect to the irrelevant issue of which debts are discharged (Lone Star having conceded the point), is both unambiguous and absolute as to questions of effect, time, and waiver.

The status of a judgment as "void" (which replaced the 1970 term "null and void") implies that it is a judgment that may be disregarded as a nullity and cannot be enforced.

The phrase "at any time obtained" (which replaced the 1970 term "theretofore or thereafter obtained") plainly means that judgments voided by the discharge include judgments obtained before, during, and after the bankruptcy.

The phrase "whether or not discharge of such debt is waived" (new in 1978) similarly nullifies all putative waivers of specific debts and appears to encompass both express waivers and waivers by conduct.

### C

The term "void" is also a term of art with a long history in the law of judgments that equates with the concept of a nullity associated with lack of jurisdiction and the ability to make a "collateral attack" on a judgment.

For example, the Supreme Court early explained the effect of a court acting without jurisdiction as follows:

> [If a court] act[s] . . . without authority, its judgments and orders are nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers.

*Elliott v. Peirsol*, 26 U.S. (1 Pet.) 328, 340, 7 L.Ed. 164 (1828), *cited with approval, Kalb v. Feuerstein*, 308 U.S. 433, 438–39 n. 8, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *cf. The Betsey*, 3 U.S. (3 Dall.) 6, 15–16, 1 L.Ed. 485 (1794).

A judgment was construed as "void" when rendered by a court lacking personal or subject-matter jurisdiction or was based on defective notice. RESTATEMENT OF JUDGMENTS §§ 5–8 & 11.

A judgment that was "void" could be the subject of a "collateral attack" through some procedure other than motions for new trial, postjudgment relief, appeal, or an independent action in equity, all of which were characterized as "direct attacks" that were required when the judgment was merely "voidable." RESTATEMENT (SECOND) OF JUDGMENTS § 80, cmt. a.

After the merger of law and equity in the mid-twentieth century, the distinctions between "void" and "voidable" and "collateral attack" and "direct attack" became an increasingly unsatisfactory way to balance the contradictory interests of finality and validity of judgments. *Id.,* §§ 12, cmts. a-b & 80, cmt. a. After the adoption of the *Restatement (Second) of Judgments* in 1980, it was recognized that it was more productive to think in terms of finality and validity rather than "void" and "voidable;" the latter terms, accordingly, were de-emphasized. They have not, however, entirely lost their meaning, and a judgment rendered without jurisdiction is still vulnerable to attack.

When the Congress enacted Bankruptcy Act § 14f in 1970 and Bankruptcy Code § 524(a) in 1978, the term "void" was still a term of art unambiguously connoting a judgment rendered without subject-matter jurisdiction that could be ignored as a nullity and collaterally attacked.

## II

The purpose of the 1970 enactment of Bankruptcy Act § 14f also informs the interpretation of its reenacted version in Bankruptcy Code § 524(a).

Between 1800 and 1970, as will be seen, the federal bankruptcy discharge was merely an affirmative defense that was waived if not timely asserted in subsequent litigation. Creditors could flout the discharge by suing and hoping the defense was not timely raised. The main purpose of the 1970 legislation was to change the discharge from an affirmative to an absolute defense.

### A

A standard statement of the pre–1970 status of the bankruptcy discharge as creating an affirmative defense that must be raised in order to prevent an enforceable judgment from being entered is *Dimock v. Revere Copper Co.*, 117 U.S. 559, 6 S.Ct. 855, 29 L.Ed. 994 (1886) (Bankruptcy Act of 1867). This decision followed the rule to that effect established under the Bankruptcy Acts of 1800 and 1841. *Steward v. Green*, 11 Paige Ch. 535 (N.Y.Ch.1845) (Bankruptcy Act of 1841), *cited with approval, Dimock*, 117 U.S. at 566, 6 S.Ct. 855, *and citing with approval, Mechanics' Bank v. Hazard*, 9 Johns. 392, 1812 WL 1144 (N.Y. Ch. 1812) (Bankruptcy Act of 1800).

In *Dimock*, the debtor filed a bankruptcy case in June 1874 in a U.S. District Court, at which time there was then pending against him a contract-based lawsuit by Revere Copper in a Massachusetts state court. Although the bankruptcy discharge was entered before the trial in the state court, Dimock did not bring the discharge to the attention of that court, which entered a $3,595.15 judgment against him. Instead, Dimock raised the discharge as a defense to a subsequent collection lawsuit "on the judgment" in New York, contending that the Massachusetts judgment could not be enforced. *Dimock*, 117 U.S. at 560–63, 6 S.Ct. 855.

The Supreme Court noted that the judgment was not made void under the Bankruptcy Act of 1867, 117 U.S. at 564, 6 S.Ct. 855, and held that the Massachusetts judgment remained valid and enforceable: "[w]e are of [the] opinion that, having in his hands a good defence at the time judgment was rendered against him, namely, the order of discharge, and having failed to present it to a court which had jurisdiction of his case, ..., the judgment is a valid judgment, and that the defence cannot be set up here in an action on that judgment." *Id.* at 566, 6 S.Ct. 855.

Although the Court made clear that it was dealing with a collateral (as opposed to direct) attack on a theory not asserted in the original action and that it might still be possible for the Massachusetts court that issued the judgment to set it aside and entertain the defense,[5] the teaching of *Dimock* was that the defense of discharge

---

5. The Court noted:
 [I]f Dimock had brought his discharge to the attention of the superior court at any time before judgment, it would have been received as a bar to the action, and, under proper circumstances, even after judgment, it might be made the foundation for setting it aside and admitting the defence.
 117 U.S. at 565, 6 S.Ct. 855. And:
 It is clear that until the judgment of the Massachusetts court is set aside or annulled

by some direct proceeding in that court, its effect cannot be defeated as a cause of action, when sued in another state, by pleading the discharge as a bar which might have been pleaded in the original action.
117 U.S. at 566, 6 S.Ct. 855.
 It also clarified that if the discharge defense had been raised and rejected in the original action, it could be renewed in the action on the judgment:

in bankruptcy was an affirmative defense that could be deemed waived if not raised.

The enactment of the Bankruptcy Act of 1898 did not alter the status of the discharge as an affirmative defense that could be lost if not raised. Thus, when the Federal Rules of Civil Procedure were adopted in 1937, "discharge in bankruptcy" was enumerated as an affirmative defense at Rule 8(c).

## B

The winds of change began to blow with the enactment of farmer bankruptcy provisions in the 1930's, including the two "Frazier–Lemke" farm mortgage acts amending Bankruptcy Act § 75.[6]

> [I]f he had appeared in the state court, and pleaded his discharge in bar, and it had been overruled as a sufficient bar, he could, nevertheless, in this action on that judgment, renew the defence.
>
> But, in such case his remedy would not lie in renewing the struggle in a new suit on such judgment, but in bringing the first judgment for review before this court, where his right under the discharge would have been enforced then, as he seeks to do it now, after submitting to that judgment *without resistance and without complaint.*

117 U.S. at 566, 6 S.Ct. 855.

**6.** The statutes were: Act of March 3, 1933, c. 204, § 1, 47 Stat. 1470–73; Act of June 7, 1934, c. 424, §§ 8–9, 48 Stat. 911, 925; Act of June 28, 1934, c. 869, 48 Stat. 1289 (Frazier–Lemke Act I); and Act of August 28, 1935, c. 792, 49 Stat. 942 (Frazier–Lemke Act II).

**7.** The first Frazier–Lemke Act was held unconstitutional. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601–602, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). The second Frazier–Lemke Act survived constitutional scrutiny. *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 470, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

**8.** The ultimate statutory language, as quoted and emphasized by the Supreme Court in *Kalb,* was:
> (*o*) Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the

### 1

When the dust settled after the second Frazier–Lemke Act in 1935,[7] all a farm debtor's property, "wherever located," was under the "sole jurisdiction and control of the court in bankruptcy." No foreclosure or execution could be maintained or instituted "in any court or otherwise," which prohibition applied to all creditors and "all judicial or official proceedings." Bankr. Act § 75(*o*)-(p); *Kalb,* 308 U.S. at 440–41, 60 S.Ct. 343.[8]

### 2

In *Kalb,* the Supreme Court resolved the effect of these farmer-debtor provi-

> following proceedings *shall not be instituted,* or if instituted at any time prior to the filing of a petition under this section, *shall not be maintained, in any court or otherwise,* against the farmer or his property, *at any time after the filing* of the petition under this section, and *prior to the confirmation* or other disposition of the composition or extension proposal by the court: ...
>
> (2) *Proceedings for foreclosure of a mortgage on land,* or for cancellation, rescission, or specific performance of an agreement for sale of land *or for recovery of possession of land;*
>
> ...
>
> (6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage.
>
> (p) *The prohibitions ... shall apply to all judicial or official proceedings in any court or under the direction of any official,* and *shall apply to all creditors, public or private,* and *to all of the debtor's property, wherever located. All such property shall be* under *the sole jurisdiction and control of the court in bankruptcy* and subject to the payment of the debtor farmer's creditors, as provided for in [this section] section 75 of this Act.

Bankr.Act §§ 75(*o*)-(p), *as quoted and emphasized by Kalb,* 308 U.S. at 440–41, 60 S.Ct. 343.

sions suspending pending state court foreclosures and placing all of the farmer-debtor's property wherever located in the exclusive jurisdiction of the bankruptcy court. The Court concluded that Congress had deprived state courts and officials of jurisdiction to foreclose, confirm a sale, execute a sheriff's deed, issue a writ of assistance, and eject the debtors from their property. *Id.* at 443–44, 60 S.Ct. 343.

The analysis in *Kalb* was straightforwardly based on the Supremacy Clause. Agreeing that "[i]t is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack," it explained that "Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." *Id.* at 438–39, 60 S.Ct. 343.

Reasoning further that, under the Bankruptcy Power, "Congress can limit the jurisdiction which courts, state or federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law," and concluding that Bankruptcy Act § 75 had been amended by the Frazier–Lemke Act specifically to deprive state courts of "power and jurisdiction to continue or maintain in any manner the foreclosure proceedings," it held that the Wisconsin courts lacked jurisdiction. Hence, its orders were a nullity in the face of the Supremacy Clause and "void." *Id.* at 439–40, 60 S.Ct. 343.

As relevant to the present appeal, the Court in *Kalb* described the congressional scheme as "self-executing" and made plain that there is no requirement that the fact of bankruptcy protection be raised in the state court:

Congress manifested its intention that the issue of jurisdiction in the foreclosing court need not be contested *or even raised* by the [debtor]. . . . [C]onsiderations as to whether the issue of jurisdiction was actually contested in the County Court, or whether it could have been contested, are not applicable where the plenary power of Congress over bankruptcy has been exercised as in this Act.

*Id.* at 444, 60 S.Ct. 343 (emphasis supplied).

*Kalb* was in the mainstream of the settled rules described above regarding "void" judgments rendered by a court without jurisdiction that were nullities and, hence, vulnerable to collateral attack in another forum. It was, thus, unremarkable that the Court cited decisions to that effect dating back to the first half of the Nineteenth Century. *Id.* at 439–440, nn. 8–12, 60 S.Ct. 343.

3

Although *Kalb* was an automatic stay case, it provided the foundation for the next important step.

The Court's reasoning regarding the exercise of the Bankruptcy Power to enjoin and render "void" state-court proceedings without the need to raise the bankruptcy issue in state court provided the model for the 1970 amendment to Bankruptcy Act § 14f that, for the first time, declared state court judgments to be "null and void" to the extent they determined the personal liability of the debtor. Bankruptcy Act § 14f, *codified at* 11 U.S.C. § 362(f) (repealed 1979).

The purpose of that legislation, Senate Bill 4247, was to reverse the *Dimock* rule that the bankruptcy discharge merely creates an affirmative defense that is waived if not raised.

Congress noted that creditors increasingly were suing discharged debtors after

bankruptcy "in the hope the debtor will not appear in that action, relying to his detriment upon the discharge," and also noted that "this results because the discharge is an affirmative defense which, if not pleaded, is waived." Hence, "S. 4247 is meant to correct this abuse." H.R. Rep. No. 91–1502 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4156; 116 Cong. Rec. 34,818 (1970) (Statements of Reps. Rogers & Wiggins).[9]

Thus, in 1970 the bankruptcy discharge lost its status as an affirmative defense. Thereafter, judgments establishing the personal liability of debtors on certain pre-petition debts were "null and void" and creditors were enjoined from collection.

## III

The 1978 Bankruptcy Code reenacted with different syntax, and elaborated in two main respects upon, the voidness provision of Bankruptcy Act § 14f. 4 Collier on Bankruptcy ¶ 524LH (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) ("Collier").

## A

■ The syntax used in new § 524(a) prescribed the legal effect of the discharge

---

9. The House Judiciary Committee report explained:

> As stated in the report on this measure by the Senate Judiciary Committee, the major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.
>
> S. 4247 is meant to correct this abuse.

H.R. Rep. No. 91–1502, 1970 U.S.C.C.A.N at 4156, *quoted by* 116 Cong. Rec. 34,818 (statement of Rep. Rogers).

> The subcommittee's ranking minority member elaborated:
>
> The bill has the unanimous and bi-partisan support of the bankruptcy subcommittee and it has the unanimous support of the House Committee on the Judiciary....
>
> Under present practice, debtors are frequently coerced by unscrupulous creditors into paying bills that have been discharged. Typically, the creditor will wait until the bankruptcy proceeding has been closed and then sue in State court on the discharged debt. Such creditors usually do not mention the discharge in bankruptcy in their complaint....
>
> When suit on a discharged debt is filed in a State court, the bankrupt must file an answer, pleading his discharge as an affirmative defense; otherwise judgment will go to the creditor by default. Many bankrupts do not realize the consequences of ignoring the State court proceeding. Others who do have great difficulty obtaining counsel because, having just gone through bankruptcy, they have no resources with which to pay an attorney's fee. This situation has been very embarrassing to members of the bar who, having represented the bankrupt in the bankruptcy proceedings, cannot continue to represent him in a series of State court proceedings without prospect of a reasonable fee. In yet other cases the service of process on the bankrupt is inadequate and he is never in fact notified of the State court suit against him, and thus he defaults.
>
> In all of these instances the concept of a discharge in bankruptcy by which the Bankruptcy Act attempts to assure the honest but unfortunate person a fresh start and rehabilitation is defeated. This problem has become more acute year by year as the number of consumer-type bankruptcy cases has increased. For several years approximately 92 percent of all bankruptcy cases filed have been personal or nonbusiness cases.

116 Cong. Rec. 34,818 (statement of Rep. Wiggins).

("discharge ... voids any judgment ... [and] operates as an injunction ...") rather than the former syntax that prescribed language for the discharge order ("order of discharge shall declare that any judgment ... is null and void ... and enjoin all creditors..."). *Compare* 11 U.S.C. § 524(a), *with* Bankruptcy Act § 14f (repealed 1979).

The meaning of a "void" judgment, however, continued to have the meaning that it had had in Supreme Court jurisprudence for nearly two centuries.

To be sure, jurisprudence scholars recognized by the 1970's that the "void" and "voidable" judgment distinction had become obsolete after the merger of law and equity and concomitant procedural developments that increased opportunities for reconsideration and modification of judgments. Thus, in the *Restatement (Second) of Judgments* that was adopted in 1980, preclusion analysis was recast to give more emphasis to finality than to the validity of a judgment that had been the touchstone of the first *Restatement of Judgments.* Nevertheless, the meaning of a "void" judgment as a judgment that could be disregarded and collaterally attacked retained vitality.

That the "void" judgment provisions of the Bankruptcy Code retained vitality is apparent from the express reference in the *Restatement (Second) of Judgments* naming § 524(a) as an example of a statute "significantly modifying the rule of res judicata in certain matters relating to bankruptcy." RESTATEMENT (SECOND) OF JUDGMENTS § 27, Reporter's Note.[10]

Moreover, the *Restatement (Second) of Judgments* expressly takes *Kalb* into account in several contexts relating to permissible collateral attacks.

The rule regarding contested subject matter jurisdiction permits collateral attacks where "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government." RESTATEMENT (SECOND) OF JUDGMENTS § 12(2). The Reporter's Note names *Kalb* as an example of a situation in which an attack for lack of subject-matter jurisdiction is permitted because "protecting the jurisdiction of a tribunal of legally superior authority is a predominant consideration." *Id.* Reporter's Note.[11]

*Kalb* is also cited as an example of the claim preclusion exception that permits relitigation based on authorization of such relitigation in a statutory or constitutional scheme. *Id.* § 26(1)(d), Reporter's Note, cmt. e.

Finally, with respect to the rule governing relief in a subsequent action, *Kalb* is given as an example "in which relief through a subsequent action is regarded as

---

**10.** A fuller version of the quotation is:

> There are sometimes special statutory provisions that modify the rules stated in this Section. ... For a statute significantly modifying the rules of res judicata in certain matters relating to bankruptcy, see § 524(a) of the Bankruptcy Code, 11 U.S.C. § 524(a) (1979). Its predecessor, § 14f of the Bankruptcy Act, 11 U.S.C. § 362(f) (1976), is discussed in Countryman, The New Dischargeability Law, 45 American Bankruptcy L.J. 1, 44–50 (1971).

RESTATEMENT (SECOND) OF JUDGMENTS § 27, Reporter's Note.

**11.** The dictum contained in footnote 9 of the Supreme Court's decision in *Kontrick v. Ryan,* 540 U.S. 443, 456 n. 9, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), does not compel a contrary conclusion. That dictum asserts "[e]ven subject-matter jurisdiction, however, may not be attacked collaterally" and cites RESTATEMENT (SECOND) OF JUDGMENTS § 12 as support for the proposition. In light of the exceptions set forth in § 12, the dictum should be understood as implicitly including the qualification, "except as set forth in the *Restatement (Second) of Judgments.*"

affording a more adequate remedy." *Id.* § 80, Reporter's Note cmt. b.

In short, the term "void" judgment at the time of the 1978 enactment of the Bankruptcy Code continued to refer to a judgment entered without jurisdiction that could be disregarded as a nullity and collaterally attacked.

### B

The two main expansions over Bankruptcy Act § 14f that appeared in § 524(a) related to the injunction and to waiver.

### 1

In the 1978 Bankruptcy Code, the injunction changed from a specific injunction directed to creditors that was to be included in an order of discharge to a statutory injunction that was expanded to apply unambiguously to all entities.

It also expanded to encompass all acts to "collect, recover or offset" a debt as a personal liability of the debtor, instead of the former language that was limited to "instituting or continuing any action or employing any process to collect" a debt as a personal liability of the debtor. *Compare* Bankruptcy Act § 14f(2), *with* 11 U.S.C. § 524(a)(2); 4 Collier ¶ 524.02[2].

### 2

■ The other big change in 1978 added "whether or not discharge of such debt is waived" to the § 524(a)(1) judgment-voiding provision and to the § 524(a)(2) injunction.

This new anti-waiver language was expressly "intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section." H.R. Rep. No. 95–595, at 366; S. Rep. No. 95–989, at 80.[12]

### 3

It follows, that the defense of discharge in bankruptcy is now an absolute, nonwaivable defense. Since 1970, it has not been an affirmative defense. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781–82 (9th Cir. BAP 1999).

### C

It is apparent from our review of § 524(a)(2) that the statutory injunction

---

**12.** The full explanation of § 524(a)(1) & (2), which was identical in both House and Senate reports, was:

Subsection (a) specifies that a discharge in a bankruptcy case voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect to a prepetition debt, and operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. *The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.* This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. § 524(d), and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect the discharge extinguishes the debt, and creditors may not attempt to avoid that. *The language "whether or not discharge of such debt is waived" is intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section.* It is directed at waiver of discharge of a particular debt, not waiver of discharge in toto as permitted under section 727(a)(9). H.R. Rep. No. 95–595, at 365–66, *reprinted in* 1978 U.S.C.C.A.N. at 6321–22; *accord* S. Rep. No. 95–989, at 80, *reprinted in* 1978 U.S.C.C.A.N. at 5866 (emphasis supplied).

and anti-waiver provisions applied to Lone Star as of the date of entry of the discharge on October 23, 1996. Before then, the automatic stay protected Gurrola from the date of the order for relief on July 8, 1996, until it expired upon the entry of discharge. 11 U.S.C. § 362(c)(2)(C).

The application of straightforward statutory analysis to Lone Star's litigation and collection activities is as follows.

### 1

■ Lone Star's July 16, 1996, letter to Gurrola demanding $2,550.00, the August 6, 1996, filing of its $2,664.90 counterclaim against Gurrola, its filing of the request for entry of Gurrola's default, and the entry of default on September 20, 1996, all violated the automatic stay.

The transmittal of the July 16, 1996, letter was a postpetition "act" to collect, assess, or recover a prepetition claim against the debtor that violated the automatic stay while that stay was in effect. 11 U.S.C. § 362(a)(6).

The various filings and the entry of default constituted the commencement or continuation of a judicial action against the debtor that was or could have been commenced before the commencement of the bankruptcy case or to recover a claim against the debtor that arose before the commencement of the case in violation of § 362(a)(1).

The *Kalb* analysis continues to apply with respect to the automatic stay, with the consequence that acts in violation of the automatic stay are void and of no effect. *40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076, 1080 (9th Cir.2003); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992), *citing Kalb*, 308 U.S. at 438, 60 S.Ct. 343.

Since the filing of the counterclaim and entry of default were "void" as stay violations, there was no counterclaim and no default upon which the state court could premise a judgment in favor of Lone Star.

### 2

■ Once the discharge was entered on October 23, 1996, any judgment that Lone Star at any time obtained on the discharged debt would automatically be rendered "void" by § 524(a)(1), and Lone Star, itself, was subject to the discharge injunction imposed by § 524(a)(2).

Thus, the default judgment obtained on March 12, 1998, was "void" the instant it was entered. 11 U.S.C. § 524(a)(1).

Lone Star's activities in prosecuting its effort to obtain a default judgment and thereafter to collect upon it violated the discharge injunction. 11 U.S.C. § 524(a)(2).[13]

■ To the extent Lone Star's violation of the discharge injunction occurred with notice of the discharge injunction, it is subject to a contempt remedy via 11 U.S.C. § 105(a). *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191–92 (9th Cir.2003); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506–07 (9th Cir.2002).

---

**13.** In contrast, the dismissal of Gurrola's complaint in November 1997 did not offend any injunction. First, the complaint was an action by, not against, the debtor. Second, to the extent that the cause of action was "property of the estate," it likely would be deemed to have been abandoned to the debtor under 11 U.S.C. § 554(c) as of the closing of the case on November 1, 1996, because it had been unambiguously identified in the Statement of Financial Affairs as a cause of action in which the debtor was plaintiff, even it was not formally scheduled as an asset. If it was not abandoned, then it would remain property of the estate protected by the automatic stay, forever. *Compare* 11 U.S.C. § 554(d), *with id.* § 362(c)(1).

### 3

Lone Star's argument that estoppel should nevertheless enable it to collect its judgment runs afoul of the anti-waiver provisions of § 524(a).

We have established that the phrase "whether or not discharge of such debt is waived" encompassed all possible theories for collecting a discharged debt as a personal liability of the debtor.

Estoppel theories are equitable theories typically based on conduct. The usual argument is that the person to be estopped has done, or omitted to do, something that makes it inappropriate for them to rely on a right that otherwise is available. This, in a functional sense, is merely one variety of waiver.

We, thus, conclude that estoppel theories may not be used to circumvent the effect of the discharge and the discharge injunction. Such uses of estoppel are varieties of waiver theories that are outlawed by the phrase "whether or not discharge of such debt is waived" in § 524(a).

In reaching this conclusion, we are mindful that scenarios can be constructed in which a discharged debtor might misbehave postpetition in a manner that so unconscionably disadvantages a creditor holding a discharged debt, or interferes with litigation in a court, as to cry out for a remedy. A number of potential remedies (especially sanctions) based on, and tailored to, the postpetition misconduct suggest themselves. The gravamen of our analysis is that § 524(a) eliminates the revival of the discharged debt as a remedy for postpetition misconduct.

Accordingly, Lone Star's theory of equitable estoppel premised upon the debtor's silence about his bankruptcy until after the default judgment was entered offends § 524(a) and must be rejected on that account.

### IV

The cases Lone Star cites do not confirm its theory that estoppel nevertheless trumps the strictures of § 524(a). No Ninth Circuit decision or decision of this Panel is on point.

### A

Lone Star points out that three other courts of appeals appear to have ruled that equitable considerations warrant refusal to treat as void state-court proceedings conducted in violation of the automatic stay. *Job v. Calder (In re Calder)*, 907 F.2d 953, 956–57 (10th Cir.1990); *Matthews v. Rosene*, 739 F.2d 249, 250–51 (7th Cir.1984); *Appeal of Brodeur (In re Smith Corset Shops, Inc.)*, 696 F.2d 971, 976–77 (1st Cir.1982).

While we do not quarrel with the outcome of those decisions, each suffers from the same fallacy: overlooking the equitable exception in the § 362(d) automatic stay relief provision that could, in each case, have been invoked to reach the same result.

The automatic stay contains an authorization for annulling the stay, which has the effect of retroactively validating acts that otherwise violated the stay. 11 U.S.C. § 362(d). Although some decisions have favored more stringent standards, we have previously explained that the correct "standard for determining 'cause' to annul the automatic stay retroactively is a 'balancing of the equities' test." *Fjeldsted v. Lien (In re Fjeldsted)* 293 B.R. 12, 21–25 (9th Cir. BAP 2003); *accord Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir.1997).

Under the balancing-of-the-equities standard, or any stricter standard, the circumstances that prompted the First,

Seventh, and Tenth Circuits to invoke equitable principles to conclude that acts putatively in violation the stay were not void are sufficient to warrant annulling the stay. None of the courts of appeals demonstrated awareness of the § 362(d) statutory annulment authority that would have obviated the need independently to invoke equitable doctrines.

Since § 362(d) provides statutory authority to annul the automatic stay on the facts of *Calder, Matthews,* and *Smith Corset Shops,* those decisions should be understood as requiring annulment of the stay in accordance with the statute, even though the courts merely mouthed equitable principles. Indeed, the Ninth Circuit has construed *Matthews* in precisely this fashion. *Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin),* 890 F.2d 123, 126 (9th Cir.1989); *accord, In re Raanan,* 181 B.R. 480, 485–86 (Bankr.C.D.Cal.1995).

Moreover, neither *Calder,* nor *Matthews,* nor *Smith Corset Shops,* appears to have implicated § 524(a). In *Calder,* the discharge was denied. *Calder,* 907 F.2d at 956. *Matthews* was a chapter 13 case in which it is not indicated that a discharge was issued. *Matthews,* 739 F.2d at 250. *Smith Corset Shops* involved an appeal from a bankruptcy court decision refusing to find that a conversion occurred when a creditor refused to turn over property acquired in innocent violation of the automatic stay. *Smith Corset Shops,* 696 F.2d at 973–74.

In view of the statutory authority to accomplish the results achieved, those decisions of other circuits are not persuasive with respect to the question whether equitable principles can be used to trump either § 362 or § 524(a).

### B

Three bankruptcy court decisions are also cited by Lone Star. One is inapposite. Two are not persuasive.

One of the bankruptcy court decisions upon which Lone Star relies imposes equitable estoppel to extend the deadline under Federal Rule of Bankruptcy Procedure 4007(c) to file an action to except a debt from discharge. *Fed. Home Loan Mortgage Corp. v. Potter (In re Potter),* 185 B.R. 68 (Bankr.C.D.Cal.1995). This decision follows our own decisions to the same effect. *E.g., Schreiber v. Halstead (In re Halstead),* 158 B.R. 485, 487–88 (9th Cir. BAP 1993), *aff'd & adopted,* 53 F.3d 253 (9th Cir.1995).

Nor is *Potter* inconsistent with the Supreme Court's determination that the deadline prescribed by Federal Rule of Bankruptcy Procedure 4004 for objecting to discharge is a "claims processing" procedural rule that can be forfeited if not timely raised. *Kontrick,* 540 U.S. at 457–60, 124 S.Ct. 906. The Court was careful to clarify that its decision involved no question of any equity-based exception and that it was not reaching any such question. *Id.* at 457, 124 S.Ct. 906. Rather, the linchpin of the analysis was that the statute did not specify a deadline and that "it is axiomatic" that rules of practice and procedure cannot extend or limit federal jurisdiction. *Id.* at 453–54, 124 S.Ct. 906.

The issue of rule-based deadlines for filing actions objecting to discharge or to establish that a debt is nondischargeable, however, has no bearing on the question of whether equitable estoppel can trump § 524(a) of the statute. Lone Star has conceded that Gurrola's debt cannot be excepted from discharge and does not question the validity of Gurrola's discharge. Hence, *Potter* is inapposite.

Lone State also cites an Oklahoma bankruptcy court decision that is a two-page memorandum appearing to assert, *ipse dixit,* that equity can trump anything. *Lo-*

gan v. Quail Creek Bank (In re Logan), 144 B.R. 538 (Bankr.W.D.Okla.1992). We are not persuaded.

Finally, Lone Star relies on the bankruptcy trial court's decision in *Raanan*, where the debtor had intentionally concealed a cause of action (that was property of the estate) against an omitted creditor, had litigated the dispute, and had suffered an adverse judgment on a counterclaim. The court reasoned that the prepetition debt represented by the judgment on the counterclaim should be excepted from discharge on equitable grounds because the innocent creditor hired an attorney and expended time and money to assert and prevail on his counterclaim. *Raanan*, 181 B.R. at 485. The court, however, neither noted nor assessed the effect of the anti-waiver provisions of § 524(a) that we have addressed in this opinion.

We disagree with the *Raanan* decision in three respects. First, the penalty of reviving the debt does not fit the crime. The real problem was that the debtor had prosecuted a cause of action that was property of the estate and, hence, lacked standing. Such misconduct qualifies as the sort of "bad faith" violation of the litigation process that may warrant an award of attorney's fees under the court's inherent authority to impose sanctions that include attorney's fees and litigation expenses. *Chambers v. NASCO*, 501 U.S. 32, 42–47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (awarding fees as sanction); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir.1996); *Ybarra v. Boeing N. Am., Inc. (In re Ybarra)*, 295 B.R. 609, 617–22 (9th Cir. BAP 2003) (Klein, J., concurring). Second, the Bankruptcy Code is so specific with respect to a plethora of statutory nondischargeability theories that it does not admit of the nonstatutory, general equitable nondischargeability remedy that the *Raanan* court fashioned. Third, for reasons we have already explained, the anti-waiver provisions of § 524(a) forbid the use of such waiver theories to revive a prepetition debt that is not otherwise nondischargeable and forbid a sanction of reviving the discharged debt. Hence, we are not persuaded by *Raanan*.

Mr. Raanan's transgressions could adequately have been remedied without reviving the discharged debt.

In sum, the cases upon which Lone Star relies do not suffice to overcome the effect of the specific provisions of § 524(a).

## V

We must emphatically reject Lone Star's position that it was entitled to enforce its judgment until such time as the bankruptcy court issued an order barring collection activity.

To the contrary, a creditor has a *duty* to obey the discharge injunction, which duty is a modern corollary of the venerable rule that "all persons concerned in executing [void] judgments ... are considered in law as trespassers." *Elliott*, 26 U.S. at 340, *cited with approval, Kalb*, 308 U.S. at 439, 60 S.Ct. 343.

Moreover, there is no merit in Lone Star's position that the discharged debtor was obliged to take the initiative to clarify the discharge issue: "if Mr. Gurrola believed his bankruptcy immunized him from enforcement of the judgment, then he should" obtain an order from the bankruptcy court to that effect.[14] Such an or-

---

**14.** The full quotation from Lone Star's counsel was:

I also conveyed my opinion that if Mr. Gurrola believed his bankruptcy immunized him from enforcement of the judgment,

der already existed in the form of the discharge order, with its statutory injunction, enforceable by contempt proceedings.[15]

Lone Star's position is remarkably similar to that of the automatic stay violator we encountered in *Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (9th Cir. BAP 2004), who thought that he could safely quibble with a debtor about the automatic stay. We held that debtors do not bear the burden of proving to creditors the existence of the automatic stay before stay-violation liability can be imposed. *Id.* at 389. The same basic analysis applies to the discharge and discharge injunction.

As with the § 362 automatic stay, the § 524(a) discharge and the discharge injunction are effective against the world to the full extent of their statutory terms, regardless of notice. Although the discharge and discharge injunction differ from the automatic stay in the sense that the protection is limited to the personal liability of the debtor and does not, for example, affect valid prepetition liens, these are distinctions without a difference with respect to the effect on creditors. *Pavelich*, 229 B.R. at 783–84; 4 COLLIER ¶ 524.02; *cf. Johnson v. Home State Bank*, 501 U.S. 78, 82–83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (valid prepetition liens survive); *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) (same).

Not only are the discharge and discharge injunction "good against the world," they are good anywhere in the world, i.e. extraterritorially. *E.g., Hong Kong & Shanghai Banking Corp. v. Simon*, 153 F.3d 991, 995–97 (9th Cir.1998) (cataloging cases).

It follows that judgments and acts in violation of the injunction are automatically void ab initio, hence self-executing, for the same reasons as the automatic stay. 11 U.S.C. § 524(a); *cf. Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081–82 (9th Cir.2000) (en banc); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572–74 (9th Cir. 1992); *Peralta*, 317 B.R. at 389.

Lack of notice of the discharge is not pertinent to whether a judgment or act in violation of the discharge injunction is void. Nor is lack of notice a means of ratifying a void act to enforce a void judgment. 4 COLLIER ¶ 524.02[2].

While lack of notice of the bankruptcy and of the discharge may serve as a defense to contempt sanctions, *cf. Dyer*, 322 F.3d at 1191–92, the legal consequences of acts in violation of the discharge injunction do not otherwise vary.

The word "void" in § 524(a) means "void," not "voidable." Lone Star's judgment was void. Lone Star's actions in obtaining the judgment are void as having violated the discharge injunction, even though the lack of notice may be a defense to contempt sanctions. Lone Star's pur-

---

then he should apply to the Bankruptcy Court to obtain an appropriate order to bar Lone Star from pursuing such enforcement. Decl. of George M. Wallace, 10/29/03, at p. 6.

**15.** Although all courts agree that contempt is the standard method of enforcing the discharge injunction, there is debate on the question whether, in addition, there is a private cause of action for such violations. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 508–10

(9th Cir.2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422–23 (6th Cir.2000); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 443–47 (1st Cir.2000); *Bassett v. Am. Gen. Fin., Inc. (In re Bassett)*, 255 B.R. 747, 753–57 (9th Cir. BAP 2000), *aff'd in relevant part*, 285 F.3d 882 (9th Cir.2002); *Costa v. Welch (In re Costa)*, 172 B.R. 954, 965–66 (Bankr.E.D.Cal. 1994); 4 COLLIER ¶ 524.02[2][c].

suit of judgment enforcement after learning of the bankruptcy discharge violated the discharge injunction and was done at peril of contempt proceedings.

## CONCLUSION

There is no equitable exception to the provisions of § 524(a) that void any judgment at any time obtained with respect to the personal liability of the debtor for a specific discharged debt, which voidness cannot be waived, and that similarly enjoin all entities from attempting to collect such a discharged debt. Any postpetition misconduct by the debtor must be remedied by some means tailored to that misconduct and cannot include reviving the discharged debt. AFFIRMED.