**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: CLAUDE G. COSSU,

*Debtor,*

CLAUDE G. COSSU,

*Appellant,*

v.

JEFFERSON PILOT SECURITIES
CORPORATION,

*Appellee.*

No. 04-16699

D.C. No.
CV-04-00502-MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
April 13, 2005—San Francisco, California

Filed June 3, 2005

Before: Donald P. Lay,* Betty B. Fletcher, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

*The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## COUNSEL

Timothy J. Walsh, Fairfield, California, for the appellant.

Gilbert Khachadourian, Jr., Watson, Khachadourian & Iams, Sacramento, California, for the appellee.

## OPINION

HAWKINS, Circuit Judge:

Debtor Claude Cossu appeals the district court's order affirming the bankruptcy court's determination that Jefferson Pilot Securities ("Jefferson Pilot") had a valid bankruptcy claim against Cossu of approximately $1.1 million and that such debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Cossu began working in the insurance business in 1971. In connection with this work, Cossu was a National Association of Securities Dealers ("NASD") registered broker. As a NASD broker/dealer, Cossu knew he had an ongoing obligation to report outside business activities to the company with whom he was licensed (referred to in the industry as "selling away").

In 1995, he became a registered representative for Jefferson Pilot.[1] In response to a questionnaire completed at the begin-

---

[1] In 1997, Jefferson Pilot merged with Chubb Securities Corp., which later changed its name back to Jefferson Pilot. This opinion will consis-

ning of his employment, he specifically denied being engaged in any such outside activities. Cossu was also aware that under NASD guidelines, he was not permitted to engage in private securities transactions without prior notice and approval from Jefferson Pilot.

In May 1997, Cossu received a fax from SafeRate Financial Services ("SafeRate") advertising an investment that promised clients a ten percent annual percentage rate with a nine-month term. In response to an inquiry by Cossu, SafeRate sent another fax, stating that the product was "an insured guaranteed cash contract/corporate promissory note." The fax claimed the notes were "not a security," but an "exempt security" that still had to "be in compliance with the laws governing exempt securities."

Cossu then signed an agreement with SafeRate, agreeing to act as an agent and market its products. Cossu and SafeRate also entered into a separate commission agreement. Cossu did not notify Jefferson Pilot that he had entered into the agreement with SafeRate, claiming he did not think SafeRate's products were securities.

In mid-October 1997, Cossu signed another representative agreement with Jefferson Pilot, agreeing to abide by the rules and regulations of the company and the industry and not to engage in outside business activity without approval from the company. The compliance manual listed private securities transactions as prohibited acts.

In 1998, Cossu received a brochure describing the promissory notes offered by SafeRate. The brochure stated that although the notes were exempt from registration with the SEC, they were subject to securities law and the anti-fraud provision of the 1933 Securities Act. Throughout 1998 and

tently refer to the appellee as Jefferson Pilot to avoid confusion.

into 1999, Cossu sold various investments to clients through SafeRate, earning nearly $500,000 in commissions. During the same period, Cossu was apparently gambling frequently with large sums of money as the result of what the bankruptcy court described as a "serious gambling habit."

In August 1999, the SEC closed down one of the companies from which Cossu's clients had purchased the SafeRate notes. The SEC also brought a complaint against Cossu, alleging he had (1) made material misrepresentations and omissions in connection with the offer and sale of unregistered securities, (2) acted as an unregistered broker/dealer in those notes, and (3) received ill-gotten gains in the form of commission payments from his sale of those securities. Cossu settled the SEC lawsuit in 2000.

Cossu's clients, however, filed claims against Jefferson Pilot for individual losses suffered from investments made through Cossu, Jefferson Pilot's registered representative. Jefferson Pilot settled many of these claims shortly before they were to go to trial.

Meanwhile, Cossu filed a Chapter 7 bankruptcy petition. Jefferson Pilot then brought an adversary proceeding against Cossu, alleging that the amounts it paid to defend and settle the claims by Cossu's clients should be nondischargeable debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). Following a trial, the bankruptcy judge found that Cossu knew the notes were securities, and held the debt to be nondischargeable, apparently relying on § 523(a)(4) (fraud in a fiduciary capacity), and ruled the amount of debt to be approximately $1.9 million.

On appeal, the district court reversed and remanded. It found that the bankruptcy court had made insufficient findings with respect to the validity or amount of Jefferson Pilot's claim, and that the statutes relied on by Jefferson Pilot to establish a fiduciary duty were legally insufficient under

§ 523(a)(4). It also noted that the factual findings by the bankruptcy court were insufficient to support non-dischargeability under the other two sections.

On remand, the bankruptcy court focused on the two remaining claims under § 523(a)(2)(A) and (a)(6). The bankruptcy court held the debt nondischargeable under § 523(a)(2)(A), making more detailed findings as to each necessary element.[2] The bankruptcy court also addressed in more detail the amount and validity of Jefferson Pilot's claim. The court held that Jefferson Pilot had a valid claim against Cossu based on an indemnity provision in its registered representative agreement, in which Cossu agreed to indemnify Jefferson Pilot for any losses (including attorneys' fees) arising out of any unauthorized, illegal or improper acts by Cossu.

The court revised the amount of the claim downward, however, concluding that Jefferson Pilot should not recover for pending claims. It awarded a total of $1,197,109.30, which consisted of $1,135,746.98 in out-of-pocket settlement costs plus $61,362.32 in defense costs on pending cases.

Cossu appealed again, but this time the district court affirmed. The district court held that the bankruptcy court's findings regarding Cossu's fraudulent intent were not clearly erroneous, and affirmed the non-dischargeability under § 523(a)(2)(A). The district court also refused to disturb the bankruptcy court's findings that the settlement amounts were reasonable and flowed from Cossu's conduct. Cossu then appealed to this court.

---

[2]The bankruptcy court also found the debt to be non-dischargeable pursuant to § 523(a)(6), but the district court did not sustain this finding, due to a technical failure of the bankruptcy court to separately address the willful and malicious prongs. This issue is not before us on appeal.

## STANDARD OF REVIEW

We independently review the bankruptcy court's decision without giving deference to the district court. *In re Saxman*, 325 F.3d 1168, 1172 (9th Cir. 2003). We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re Jastrem*, 253 F.3d 438, 441 (9th Cir. 2001).

## DISCUSSION

I.   Validity of Jefferson Pilot's Claim

**[1]** Cossu argues that the bankruptcy court clearly erred by determining that Jefferson Pilot had a "claim" within the meaning of the Bankruptcy Code. The term "claim" is defined in 11 U.S.C. § 101(5), and includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." The validity of a creditor's claim is determined by the rules of state law, including all nonbankruptcy law that creates substantive claims "such as federal securities law or other federal antifraud laws." *Grogan v. Garner*, 498 U.S. 279, 283-84 & n.9 (1991).

The bankruptcy court found Jefferson Pilot had a contractual right to payment pursuant to an indemnity provision that was part of Jefferson Pilot's Registered Representative Agreement. In the agreement, Cossu agreed to:

> indemnify and hold the Company harmless against any claims, demands, suits, expenses (including reasonable attorney fees and expenses), losses or other forms of liability that arise out of or by reason of any act or failure to act by the Registered Representative which is unauthorized, illegal, dishonest, improper,

or in breach of this agreement or the current compliance and supervisor manuals in effect.

The bankruptcy court found that Cossu's "selling away" activities were unauthorized, dishonest, improper and in violation of his agreement with Jefferson Pilot, and that the damages incurred by Jefferson Pilot — defense costs and settlement amounts — were caused by those actions, thus satisfying the requirements for indemnity pursuant to the agreement.

[2] The bankruptcy court correctly determined that Jefferson Pilot had a bankruptcy claim against Cossu, pursuant to the above-quoted contractual indemnity provision. The court erred, however, in the amount it awarded to Jefferson Pilot on that claim based on the record before it.

[3] As the party seeking indemnity, without a judgment ordering it to pay, Jefferson Pilot had the burden of demonstrating that it was actually or at least potentially liable on the underlying claim and that the settlement amount was reasonable. *See* 41 Am Jur. 2d Indemnity § 46. A party cannot make a voluntary payment to settle an action and then hold another responsible for that payment through indemnity. *See S. Cal. Gas Co. v. Venture Pipe Line Const. Co.*, 309 P.2d 849, 852 (Cal. Ct. App. 1957) (holding a voluntary payment made by the indemnitee, without regard to its liability, is not recoverable); *Morrissette v. Sears, Roebuck & Co.*, 322 A.2d 7, 9 (N.H. 1974) (same).[3]

[4] Although Jefferson Pilot introduced information regard-

---

[3]At argument, the parties did not agree as to which state law applies to the indemnity claim. Although Cossu assumed California law applies, Jefferson Pilot properly noted that the registered representative agreement containing the indemnity provision indicates that New Hampshire law governs. In any event, the law on this point is the same in both jurisdictions.

ing the amounts it paid to settle the claims, it provided no evidence about the specific causes of action the claimants brought against Jefferson Pilot or what state or federal law applied to those actions. On this scant record, we cannot say that Jefferson Pilot demonstrated its actual or potential liability so as to sustain the indemnity claim with respect to the settlement amounts. *See Carpetland of Northwest Ark., Inc. v. Howard*, 803 S.W.2d 512, 514 (Ark. 1991) (upholding denial of indemnity claim where indemnitee made no showing that the settlement was made under legal compulsion, and noting that as a consequence "Carpetland's exposure to a judgment, the advisability of reaching a settlement, or the reasonableness of the amount are not matters of record.").

**[5]** Nonetheless, Jefferson Pilot *did* introduce evidence that Cossu's customers sued Jefferson Pilot because of Cossu's actions and that it had to incur attorneys' fees and costs to defend those actions. Under the indemnity provision, it appears these fees and costs could be recovered irrespective of liability in the underlying lawsuit. Moreover, Jefferson Pilot had alternatively asserted a claim against Cossu that was based on the assignment of claims it received from Cossu's customers in some of the settlement agreements. This alternative right to payment was never addressed by the bankruptcy court because it sustained the indemnity cause of action. On remand, we leave it to the bankruptcy court to address these issues in the first instance.

## II.   Non-Dischargeability of the Debt

**[6]** Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is not dischargeable. The creditor seeking to prove nondischargeability under this section must establish: (1) a misrepresentation of fact by the debtor, (2) that the

debtor knew at the time to be false, (3) that the debtor made with the intention of deceiving the creditor, (4) upon which the creditor relied, and (5) that was the proximate cause of damage to the creditor. *In re Britton*, 950 F.2d 602, 604 (9th Cir. 1991). In this appeal, Cossu contests the bankruptcy court's findings regarding proximate cause.

On remand following the first appeal to the district court, the bankruptcy court made the following findings:

> Cossu knew that he was required to report outside business activities to Jefferson Pilot, and Cossu knew that this requirement was an important and ongoing obligation. Cossu knew the failure to report these outside activities was expressly prohibited by Jefferson Pilot and NASD regulations. Despite his knowledge in this regard, Cossu expressly stated in his 1995 U-4 Application (which Cossu failed to update as required), and, more importantly, in his 1998 Registered Representative Compliance Questionnaires with Jefferson Pilot, that he was not selling unapproved securities and was not engaged in any outside business activities. These were material misrepresentations of fact by Cossu that he knew were false.

> It is also clear to this Court that Cossu's misrepresentations to Jefferson Pilot in this regard were made with the intention of deceiving Jefferson Pilot. Cossu had a serious gambling habit and needed the commission money from the sales of the improper securities to support that gambling habit. His sales of these securities coincided with his gambling habit. This Court believes that Cossu wanted to hide his conduct from Jefferson Pilot so Jefferson Pilot would not stop him from selling the improper securities. Jefferson Pilot reasonably relied on Cossu's misrepresentations to its detriment.

**[7]** To the extent Jefferson Pilot has a valid claim against Cossu, the bankruptcy court did not err by finding it to be nondischargeable. The fraud with respect to Jefferson Pilot consisted of Cossu's misrepresentations about his outside sales activities. As the bankruptcy court found, Cossu purposefully hid these dealings from Jefferson Pilot, which would have required him to stop the outside sales (or terminated his representative status). Unaware of Cossu's actions, Jefferson Pilot remained in the contractual relationship with Cossu and thus remained subject to lawsuits by and (possibly) liability to Cossu's customers. Cossu's fraud was therefore the proximate cause of Jefferson Pilot's losses.[4]

Because the bankruptcy court erred in calculating the amount of the indemnity award on the record before it, we remand to the district court with instructions to remand to the bankruptcy court for further proceedings, which may include entertaining Jefferson Pilot's alternative theories of recovery.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED. Each party to bear its own costs on appeal.

---

[4]To the extent Cossu argues that the bankruptcy court did not determine how Jefferson Pilot would have acted differently to prevent or limit its losses, our case law does not require the bankruptcy court to "divine what might have happened" if the fraud had not occurred, so long as the creditor had options available that it did not exercise as a result of the fraud. *In re Siriani*, 967 F.2d 302, 306 (9th Cir. 1992).