NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1621-KiTaKu |
| TONY L. PHAN and JENNY NGUYEN, | Bk. No.   8:12-16820-MW |
| Debtors. | Adv. No.  8:12-1334-MW |
| TONY L. PHAN; JENNY NGUYEN, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| THU NGUYEN; TRUC PHAN, | |
| Appellees. | |

Argued and Submitted on September 19, 2013,
at Pasadena, California

Filed - February 24, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances:   David Y. Tang argued for appellants Tony L. Phan
and Jenny Nguyen; Justin Sterling of Do Phu & Anh
Tuan, APLC, argued for appellees Thu Nguyen and
Truc Phan.

Before: KIRSCHER, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Appellants, chapter 7 debtors Tony L. Phan and Jenny Nguyen ("Debtors"), appeal an order from the bankruptcy court granting appellees' motion for summary judgment determining that their debt was excepted from discharge under 11 U.S.C. § 523(a)(2)(A)[2] based on issue preclusion. We VACATE and REMAND.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A. Prepetition events**

Appellees, Thu Nguyen and Truc Phan ("Plaintiffs"),[3] are related to Debtors. As alleged by Plaintiffs, in or about July 2000, the parties agreed to purchase together a residence located in Garden Grove, California ("Residence"). Each couple was to contribute 50% of the down payment and 50% of the costs associated with the purchase. Each couple was to have a 50% ownership interest in the Residence and share equally the benefits and obligations of ownership, including paying 50% of the mortgage payments, utilities, homeowner association fees and property taxes. Title to the Residence was taken in Debtors' names only. Despite Plaintiffs' repeated requests over the years, their names were never put on the title. Defendants assured Plaintiffs that they still held a 50% ownership interest.

In July 2007, Plaintiffs sued Debtors in state court over the ownership interest in the Residence ("First Case"). A Lis Pendens

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] Because the adverse parties have the same surnames, for clarity we refer to them as "Debtors" and "Plaintiffs."

-2-

was recorded on August 3, 2007, in connection with the lawsuit.

On January 28, 2009, the allegations in the First Case were settled in open court ("Settlement Agreement"). The reporter's partial transcript indicates that Debtors agreed Plaintiffs had a 50% interest in the Residence and agreed to pay Plaintiffs 50% of the Residence's net worth (appraised net worth less selling costs plus mortgage and prorated property taxes). The payment to Plaintiffs was to be accomplished by either refinancing the Residence or Debtors buying out Plaintiffs' 50% share of the equity in it. At that time, Plaintiffs believed their share of the proceeds to be $76,500.[4]

On May 14, 2010, Plaintiffs filed a First Amended Complaint ("Second Case") in state court, alleging that Debtors had intentionally concealed from them that Debtors had secretly secured a $150,000 line of credit ("HELOC") on the Residence in December 2007 and, during the settlement negotiations that led to the January 28, 2009 Settlement Agreement, had intentionally failed to disclose this second lien. Plaintiffs discovered the existence of the HELOC on or about April 20, 2009.[5] According to

---

[4] This figure is based on the following:

| | | |
|---|---|---|
| Residence fair market value: | $ 270,000 | |
| Balance of first mortgage: | − $ 90,000 | |
| Broker and other fees (10%): | − $ 27,000 | |
| Total equity: | $ 153,000 ÷ 2 = $76,500 | |

[5] Plaintiffs also sued Wells Fargo Bank for giving Debtors the HELOC while the Lis Pendens was in existence against the Residence. Plaintiffs and Wells Fargo ultimately settled. According to the parties' stipulated judgment, on April 27, 2009, about one week after Plaintiffs discovered the second lien, the state court granted Plaintiffs' ex-parte application to enforce the Settlement Agreement and ordered that the Residence be sold

(continued...)

-3-

Plaintiffs, shortly after entering the Settlement Agreement, Debtors stopped making any further mortgage payments, took the remaining proceeds from the HELOC, abandoned the Residence, and made their whereabouts unknown. As a result, the Settlement Agreement could not be effectuated. Plaintiffs claimed to have made all further mortgage and HOA payments since that time. By August 2009, the first lien was in default and foreclosure proceedings were initiated. Plaintiffs eventually cured the arrearages and saved the Residence from foreclosure. The Second Case asserted claims for intentional misrepresentation, negligent misrepresentation, conversion, declaratory judgment, equitable lien, constructive trust and quiet title.

Debtors failed to file an answer in the Second Case, and their default was taken. On June 14, 2011, Plaintiffs submitted a request for default judgment seeking $171,812.52 in damages for Debtors' alleged fraud. The breakdown of Plaintiffs' claimed damages was as follows:

| | |
|---|---|
| Plaintiffs' share of proceeds had Residence been sold as ordered: | $ 76,500.00 |
| Interest @ 8% on proceeds: | $ 6,120.00 |
| Mortgage payments made since January 2009: | $ 40,389.72 |
| HOA fees paid since October 2009: | $ 5,347.80 |
| Costs: | $ 455.00 |
| Attorney's fees: | $ 43,000.00 |
| Total Damages: | $ 171,812.52[6] |

---

[5](...continued)
and that Plaintiffs receive 50% of the net proceeds, exclusive of the $150,000 second lien.

[6] The attachment to Plaintiffs' Request for Court Judgment filed with the state court on June 19, 2011, states damages in the amount of $171,357.52, but the correct arithmetic number is $171,812.52, which is closer to the $171,813 figure Plaintiffs state on the cover sheet for their request.

-4-

In support of their default judgment request, Plaintiffs offered their declarations, their attorney's declaration, and cancelled checks evidencing all payments made.

On July 6, 2011, the state court entered a default judgment against Debtors in the Second Case ("Default Judgment"). Although it did not make any specific factual findings regarding Debtors' fraud, the state court awarded Plaintiffs reduced damages in the amount of $132,584.90: $122,237.52 in general damages ($76,500 + $40,389.72 + $5,347.80); $6,120.00 in interest; $3,772.38 in attorney's fees (as opposed to the $43,000 requested); and $455.00 for costs, based on Plaintiffs' testimony and other evidence.

Plaintiffs executed on the Default Judgment by garnishing Debtors' wages. Debtors filed a chapter 7 bankruptcy case on May 31, 2012.

**B.    The nondischargeability proceeding**

On June 21, 2012, Plaintiffs timely filed an adversary complaint seeking to except their debt from discharge under § 523(a)(2)(A), (a)(4) and (a)(6). In support, Plaintiffs submitted copies of the First Amended Complaint in the Second Case, the stipulated judgment with Wells Fargo and the Default Judgment.

Like the Second Case, the nondischargeability complaint alleged fraud and conversion and further noted that Plaintiffs obtained a judgment against Debtors for intentional misrepresentations, negligent misrepresentation, conversion, declaratory judgment, equitable lien and constructive trust. Debtors filed their answer on July 26, 2012.

On September 25, 2012, Plaintiffs moved for summary judgment

on the § 523 claims, contending that their debt was excepted from discharge based on issue preclusion ("MSJ"). Although Plaintiffs acknowledged that the complaint in the Second Case asserted claims other than fraud, they argued that the basis of the complaint was for Debtors' fraudulent conduct in inducing them to enter into the Settlement Agreement in the First Case and that the Default Judgment was granted on the basis of Debtors' intentional misrepresentation. In support of the MSJ, Plaintiffs submitted copies of the Third Amended Complaint filed in the First Case, the First Amended Complaint filed in the Second Case, the transcript from the settlement hearing in the First Case, the prove-up documents Plaintiffs submitted with their default judgment request, and the Default Judgment.

Debtors opposed the MSJ. They argued that Plaintiffs' Second Case, which resulted in the Default Judgment, failed to provide any facts showing that Debtors had committed actual fraud or made a false representation leading the parties to reach the Settlement Agreement. Debtors further argued that the Second Case failed to include any factual basis showing that Debtors were acting in a fiduciary capacity while the alleged fraud or defalcation was perpetrated or showing that Debtors had caused a willful and malicious injury to Plaintiffs by applying for the HELOC when that loan was applied for long before the settlement was even discussed. More importantly, Debtors argued that the Default Judgment did not make any findings of wrongdoing amounting to fraud, false pretense, or conversion. Debtors argued that the state court could have granted damages solely based on Plaintiffs' other causes of actions, which may not be exceptions to discharge

-6-

under § 523(a).  Debtors argued that Plaintiffs were not entitled to summary judgment as they had failed to establish that no material facts were in dispute.

On October 30, 2012, Debtors filed an objection to certain evidence submitted by Plaintiffs in support of the MSJ, particularly the Default Judgment and the documents Plaintiffs had submitted in state court to prove up their default judgment request.

The bankruptcy court held a hearing on the MSJ on November 7, 2012.  We do not have a copy of the transcript in the record.  The court apparently took the matter under advisement after the hearing.

On November 16, 2012, the bankruptcy court entered a memorandum decision and order granting Plaintiffs' MSJ and determining that the Default Judgment was excepted from discharge under § 523(a)(2)(A) based on issue preclusion.  Debtors' objection to certain evidence was denied for being untimely.

Debtors filed a premature notice of appeal on November 30, 2012, which was deemed timely once the bankruptcy court entered a judgment in favor of Plaintiffs later that same day. Rule 8002(a).  The judgment awarded Plaintiffs $132,584.90, the full amount of the Default Judgment, plus statutory interest.

**II. JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

**III. ISSUES**

1.   In granting summary judgment, did the bankruptcy court err in

-7-

determining that issue preclusion was available, or abuse its discretion in applying issue preclusion to the Default Judgment?

2. Did the bankruptcy court err in determining that the debts incurred by Debtors' non-payment of the mortgages and HOA fees were also excepted from discharge?

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir. 2010); Cutter v. Seror (In re Cutter), 398 B.R. 6, 16 (9th Cir. BAP 2008).

We review de novo a bankruptcy court's determination that issue preclusion is available. Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006). Once we determine that issue preclusion is available, we review whether applying it was an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

The question of whether a claim for relief is dischargeable presents mixed issues of law and fact, which we also review de novo. Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001). The Ninth Circuit has held that the bankruptcy court's findings made in the context of the dischargeability analysis, including the court's findings made as part of the dischargeability ruling, are factual findings reviewed under the clearly erroneous standard. Candland v. Ins. Co. of N. Am.

(In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996). "Thus, whether a creditor has proven an essential element of a claim under § 523 is a factual determination reviewed for clear error." Kaur v. Kaur (In re Kaur), 2011 WL 4502981, at *2 (9th Cir. BAP June 29, 2011) (citing In re Candland, 90 F.3d at 1469; Cossu v. Jefferson Pilot Sec. Corp. (In re Cossu), 410 F.3d 591, 595-96 (9th Cir. 2005); Am. Express Travel Related Servs. Co. v. Vee Vinhnee (In re Vee Vinhnee), 336 B.R. 437, 443 (9th Cir. BAP 2005)).

A finding is clearly erroneous if it is "illogical, implausible or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

<strong>V. DISCUSSION</strong>

**A.  Governing law**

   **1.   Summary judgment standards**

Under Civil Rule 56(a), applicable here under Rule 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment should not be entered when there are disputes over facts that may affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The moving party bears the initial burden of showing that no material factual dispute exists. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). When ruling on a motion for summary judgment, a court

-9-

must view all the evidence in the light most favorable to the nonmoving party. Cnty of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

**2. Issue preclusion standards**

Preclusion principles apply in discharge exception proceedings under § 523(a) to preclude relitigation of state court findings relevant to the dischargeability determination. Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). Further, 28 U.S.C. § 1738 requires the Panel, as a matter of full faith and credit, to apply the relevant state's preclusion principles. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Here, we apply the issue preclusion principles of California, the state from which the Default Judgment originated. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).

Under California law, issue preclusion bars relitigation of an issue if: (1) the issue sought to be precluded is identical to that decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the judgment in the prior proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same, or in privity with, the party to the prior proceeding. Harmon v. Kobrin, (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001)(citing Lucido v. Sup. Ct., 51 Cal.3d 335, 341 (1990)).

The party seeking to assert issue preclusion has the burden of proving all the requisites for its application. Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995). "To sustain this burden, the party must introduce a record sufficient to

-10-

reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Id. Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the issue preclusive effect. Id.

**3. Exceptions to discharge under § 523**

Plaintiffs' complaint contains allegations for establishing nondischargeable debts under §§ 523(a)(2)(A), 532(a)(4) and 523(a)(6). The bankruptcy court focuses on § 523(a)(2)(A) in its memorandum of decision and order and specifically reaches no decision on whether any debt is excepted from discharge under §§ 523(a)(4) and 523(a)(6). The bankruptcy court concludes that the Second Case limited "its scope of factual allegations to those of intentional fraud, deceit and concealment." Memo. Dec. (Nov. 16, 2012) Docket No. 22, p. 3. Later in its memorandum decision, the court concludes:

> The set of operative facts in both the state court complaint and the adversary complaint allege fraud – and only fraud. Plaintiffs do not plead mistake, simple breach of contract or even negligence. The state court complaint alleges other causes of action including conversion, equitable lien, constructive trust, unjust enrichment, and quiet title, but all of these causes of action stem from [Debtors'] fraud. If Plaintiffs had alleged both fraud and breach of contract, the legal analysis perhaps would be different. But as Plaintiffs argued their case, their only avenue to a remedy was through a finding of fraud. Therefore, fraud was the only issue before the Superior Court, and this Court has specifically found as a fact that the Superior Court determined that line item damages of $76,500.00 should be awarded in respect of such fraud.

Memo. Dec. (Nov. 16, 2012) Docket No. 22, p. 5. Although conversion is alleged in the Second Case and in the adversary complaint, no findings address whether conversion may have been the basis for any judgment, based on Debtors' wrongful exercise

-11-

and control of the net equity in the amount of $76,500 to which Plaintiffs were entitled under the Settlement Agreement.

At the time Plaintiffs submitted their documents to prove-up their state court Request for Court Judgment, their declaration asserted claims for intentional and negligent misrepresentations, conversion and quiet title. Plaintiffs requested the same amount of damages for intentional and negligent misrepresentations and conversion. Plaintiffs' attorney attached a statement to Plaintiffs' Request for Court Judgment that identified fraud damages in the amount of $76,500; no mention is made regarding damages for conversion. The state court judge made no specific findings as to whether the recalculated damages were based on fraud or conversion.

To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the debtor's statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). The elements of fraud under California law and the elements of fraud under § 523(a)(2)(A) are identical. Younie v. Gonya (In re Younie), 211 B.R. 367, 373-74 (9th Cir. BAP 1997).

Under California law, conversion is "the wrongful exercise of dominion over the personal property of another." Peklar v. Ikerd (In re Peklar), 260 F.3d 1240, 1037 (9th Cir. 2001) (citing

-12-

*Taylor v. Forte Hotels Int'l*, 235 Cal.App.3d 1119, 1124 (1991)). *In re Peklar*, 260 F.3d at 1037, further instructs: "'The act must be knowingly or intentionally done, but a wrongful intent is not necessary.' *Taylor*, 235 Cal.App.3d at 1124) (citing *Poggi v. Scott*, 167 Cal. 372, 375 (1914). Under California law, 'a conversion is not per se always a willful and malicious injury to the property of another.' *Larsen v. Beekmann*, 276 Cal.App.2d 185, 189, [(1969)]." "Under California preclusion law, collateral estoppel effect is given to a judgment that 'actually and necessarily' decides the issue in question. *People v. Howie*, 41 Cal.App.4th 729, 736 (1995). A judgment for conversion under California substantive law decides only that the defendant has engaged in the 'wrongful exercise of dominion' over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused 'willful and malicious injury' within the meaning of § 523(a)(6). A judgment for conversion under California law therefore does not, without more, establish that a debt arising out of that judgment is non-dischargeable under § 523(a)(6)." *In re Peklar*, 260 F.3d at 1039. Likewise, the establishment of conversion is not dependent on proving fraudulent intent. In California, conversion committed with fraudulent intent constitutes embezzlement. *In re Basinger*, 45 Cal.3d 1348, 1363 (1988) (citing *People v, Kronemyer*, 189 Cal.App.3d 314, 361 (1987)). A judgment of conversion does not necessarily decide that the defendant has caused conversion with fraudulent intent or embezzlement.

-13-

**B.    The bankruptcy court did abuse its discretion in applying issue preclusion to the Default Judgment.**

California law accords preclusive effect to default judgments, "at least where the judgment contains an express finding on the allegations." Gottlieb, 141 Cal.App.4th 110, 149 (2006); Green v. Kennedy (In re Green), 198 B.R. 564, 566 (9th Cir. BAP 1996). The rationale behind finding that default judgments can be preclusive is that defendants who are served with a summons and complaint but fail to respond are presumed to admit all the facts pled in the complaint. In re Harmon, 250 F.3d at 1247. Therefore, a default judgment:

> conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment[.]

Gottlieb, 141 Cal.App.4th at 149 (internal citations omitted).

At the outset, we observe that the fourth and fifth criterion for application of issue preclusion are satisfied. The Default Judgment is final and was on the merits, and the parties in each action are the same. Debtor does not challenge the bankruptcy court's findings with respect to these requirements on appeal. Accordingly, we review only the first three.

We conclude, as did the bankruptcy court, that the first criterion for application of issue preclusion is satisfied. "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." Lucido, 51 Cal.3d at 342. Here, the issues at stake in the state court proceeding and in the adversary proceeding were the same:  whether Debtors'

conduct constituted fraud or conversion and damaged Plaintiffs. The First Amended Complaint in the Second Case does not plead mistake, simple breach of contract or even negligence, but it does plead fraud and conversion. Debtors do not appear to challenge the bankruptcy court's finding that this first criterion involving "identical factual allegations" is satisfied. Their argument focuses more on whether the issue of fraud was actually litigated and necessarily decided in the prior proceeding.

For a default judgment to be "actually litigated," the material factual issues must have been both raised in the pleadings and necessary to uphold the default judgment. Gottlieb, 141 Cal.App.4th at 149. Therefore, the record in the prior proceeding must show an express finding upon the allegation for which preclusion is sought. However, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." In re Cantrell, 329 F.3d at 1124. "In such circumstances, an express finding is not required because if an issue was necessarily decided in a prior proceeding, it was actually litigated." Id. (internal citations omitted).

Debtors assert that the issue of fraud was not actually litigated, because the Default Judgment did not contain express findings of fraud or any specific ruling on the issue of fraud. They also contend that the issue of fraud was not necessarily decided, because the damages that were awarded could have been based on Plaintiffs' claims for other causes including conversion. We agree.

Here, the First Amended Complaint and the nondischargeability complaint alleged fraud and conversion. As Debtors assert, the

-15-

First Amended Complaint alleged claims that were non-fraud related. Although the bankruptcy court concluded that Plaintiffs' factual allegations supporting their claims for negligent misrepresentation, declaratory judgment, equitable lien, constructive trust and quiet title were entirely supported by factual allegations that Debtors intentionally and knowingly deceived Plaintiffs, the court did not similarly conclude that the factual allegations also established conversion.

On this record, we are unwilling to conclude that Debtors' fraud underlies all of the state court claims. The Second Case allegations and the Plaintiffs' declaration specifically include allegations concerning 'wrongful exercise of dominion' of the net proceeds to be distributed to them upon the sale of the property in the same amount as alleged for Debtors' fraud. The Default Judgment did not expressly identify that each component of the $132,584.90 award was based on the fraudulent conduct of Debtors. We are unable to conclude from this record that the state court expressly found that fraud was the cause of Plaintiffs' damages when Plaintiffs alleged fraud and conversion in the same amount. As no express finding exists determining whether fraud or conversion caused Plaintiffs' damages, we are hard-pressed to conclude that the express finding requirement has been waived and that the state court necessarily decided only fraud when two plausible causes exist for the recovery of damages – one possibly nondischargeable and the other dischargeable. Because the facts may support fraud and conversion as alleged in the Second Case and may have been the basis for the Default Judgment, the issue of fraud was not "actually litigated" and therefore, was not

-16-

necessarily decided.  See In re Cantrell, 329 F.3d at 1124.
Reasonable doubt exists as to which cause of action was the basis
for the judgment.  As such, the second and third criterion for
application of issue preclusion are not satisfied.

On this record, the bankruptcy court erred in concluding that
the issue of whether Debtors committed fraud within the meaning of
§ 523(a)(2)(A) was precluded by the Default Judgment and could not
be relitigated in the bankruptcy court.  Accordingly, the
bankruptcy court abused its discretion in applying issue
preclusion in this case.[7]

## VI. CONCLUSION

Because the bankruptcy court abused its discretion in
applying issue preclusion to the Default Judgment, and because
Plaintiffs did not satisfy their burden of demonstrating that no
genuine issues of material fact existed as to the elements of
fraud, the bankruptcy court erred in granting Plaintiffs summary
judgment on their § 523(a)(2)(A) claim for relief.  Therefore, we
VACATE the Summary Judgement and REMAND for further proceedings
consistent with this decision.

---

[7] If all of the threshold requirements for issue preclusion
are met, the bankruptcy court then must decide whether application
of issue preclusion would "further the policy interests underlying
the doctrine."  In re Harmon, 250 F.3d at 1249, n.11 (citing
Lucido, 51 Cal.3d at 342-43).  The California Supreme Court has
identified three such policy interests: "'preservation of the
integrity of the judicial system, promotion of judicial economy,
and protection of litigants from harassment by vexatious
litigation.'"  Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d
912, 919-20 (9th Cir. 2001)(quoting Lucido, 51 Cal.3d at 343).
The bankruptcy court did not analyze this issue, and Debtors
do not raise this on appeal.  As such, we do not consider it.
Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)(issues not
raised in appellant's opening brief are deemed waived).

-17-